WILSON v. CANTRELL.

1. TAX LIEN.—Under the law of this State, the lien for taxes is paramount to the lien of a mortgage executed before these taxes were assessed, and a purchaser at the tax sale has a better title than that acquired at a subsequent foreclosure sale.

2. TAX SALES—PURCHASE BY ATTORNEY—CREDITOR.—Pending litigation involving the foreclosure of a mortgage, the attorney for the mortgagor, who was then out of the State, purchased the mortgaged lands for himself and took the sheriff's deed in his own name, and afterwards the mortgagee

purchased this land at the foreclosure sale.  *Held*, that the purchase by the attorney was voidable at the instance of his client, the mortgagor, but he acquiescing, the mortgagee could not assail the tax title, which, thus acquired, was the better title.

3. LAW CASE—FINDINGS OF FACT by the master, concurred in by the Circuit Judge, in a law case thus heard by consent, are beyond review by this court.

4. TAX EXECUTION—TIME TO ISSUE—SALE.—Under the statute requiring a tax execution to issue "immediately upon the expiration of the time allowed by law for the payment of taxes," a sale under such an execution, not issued for more than a month after the time so fixed, is not, therefore, illegal.

5. TAX SALE—QUANTITY OF LAND.—The tax act of 1887 (19 Stat., 862,) requires the sheriff to seize *so much* of the taxpayer's estate as may be necessary to raise the sum of money named in the tax execution, and to advertise and sell it, paying over any surplus proceeds of sale to the taxpayer. *Held*, that a sale of a single tract of land for the small sum due for taxes, penalties, and costs thereon was not illegal because of the sheriff's failure to subdivide the tract into smaller lots.

6. TAX EXECUTION—POLL TAX.—The inclusion of the unpaid poll tax in the execution under which the sheriff sold the land, would not render the sale void, even if improperly included, but it was properly included in the amount to be collected of the defaulting taxpayer's property.  The other penalty imposed by the statute for non-payment of poll tax, is cumulative and not exclusive.

7. TAX DEED—BURDEN OF PROOF.—A tax deed is only *prima facie* evidence of the regularity of the proceedings under which the sale was made; but he who assails it has the burden of proof upon him to show that the law was not complied with.

Before IZLAR, J., Spartanburg, October, 1892.

Action by Stanyarne Wilson against Fielding Cantrell, commenced June 7, 1890.  The judgment of the Circuit Court was as follows:

The plaintiff commenced this action on the 7th day of July, 1890, to recover the possession of the tract or parcel of land described in the complaint.  It was referred to the master of said county to hear and determine all the issues.  The master, after taking the testimony offered and hearing argument, filed his report on the 23d day of September, 1892, holding that the plaintiff is entitled to recover the possession of the land in dispute, together with two hundred dollars damages.  To this

report the defendant filed exceptions imputing error in the findings of the master, both as to law and fact.

The case was heard by me at the October term, 1892, of the Court of Common Pleas for said county on all the papers in the case, including the testimony taken by the master, the master's report, and the exceptions of the defendant thereto. In order to obtain a clear comprehension of the questions raised by the exceptions of the defendant, I deem it necessary to state more fully the facts established by the evidence than the master has done in his report.

From the testimony, it appears that one W. H. Gowan, in September, 1883, was the owner of the land in dispute; that being largely indebted to one B. F. Bush, he, W. H. Gowan, on the thirteenth day of September, 1883, to secure said indebtedness, executed to the said B. F. Bush his promissory notes and a mortgage of said land; that afterwards certain of said notes and the mortgage securing the same were assigned to Fielding Cantrell, the defendant herein; that Fielding Cantrell, after the condition of said mortgage had been broken, advertised the mortgaged premises for sale under the power contained in the mortgage; that thereupon, W. H. Gowan filed his complaint in this court against the said Fielding Cantrell, to restrain the sale under the said power; that the defendant, Fielding Cantrell, answered the complaint, and the issues raised by the pleadings were referred to the master; that the master heard the case and filed his report therein, recommending that the said lands be sold and the proceeds applied to the debt of the said Fielding Cantrell; that the said W. H. Gowan, through Stanyarne Wilson, his attorney in said cause, filed exceptions to the report of the master; that the exceptions were heard on the 14th day of August, 1889, and overruled; that under the decree made in the cause, the mortgaged premises were sold by the master on the 7th day of October, 1889, and were bid in by said Fielding Cantrell for the sum of six hundred and fifty-five dollars, and that the said Fielding Cantrell, having complied with the terms of sale, the master executed to him a conveyance of said land.

It further appears from the evidence, that the land mortgaged

as aforesaid was listed and assessed for the taxes of the fiscal year commencing November 1st, 1887, in the name of W. H. Gowan; that the taxes and assessments charged against him on the tax duplicate for said fiscal year were not paid by him, or collected by distress or otherwise, on or before the 2d day of January, 1889, and the same became delinquent; that on the 23d day of January, 1889, the county treasurer for said county issued his tax warrant or execution, in the form required by law for the collection of delinquent taxes, against the said W. H. Gowan; that the return of the sheriff, endorsed upon said warrant or execution, is to the effect that the said W. H. Gowan had no personal property out of which the taxes charged could be made, and that he had seized, levied upon, and taken possession of one hundred and fifty acres of land, the property of W. H. Gowan; that the land so levied on by the sheriff is the land in dispute in the present action; that the amount of the taxes, assessments, and penalties stated in the warrant or execution is twenty-six dollars and forty-two cents ; that after due advertisement, the land levied on as aforesaid was sold by the sheriff on the salesday in August, 1889, before the court house door in said county, during the legal hours of sale; that at said sale, Stanyarne Wilson, the present plaintiff, became the purchaser, he being the highest bidder therefor; that he complied with the terms of the sale, and the sheriff executed to him a conveyance to said land, bearing date the tenth day of August, 1889, which was duly recorded in the register's office for said county on the 3d day of September, 1889, and that the sheriff put Stanyarne Wilson in possession of said land under said purchase and conveyance. It further appears from the evidence, that after the purchase at the master's sale by the said Fielding Cantrell, he entered into the possession of the said land, and was, at the commencement of this action, and is now, in possession of the same; that said land is worth from eight to ten dollars per acre; that the rental value is one hundred dollars per annum, and that said land could have been divided and sold in several tracts.

In addition to the foregoing facts, an effort was made on the part of the defendants to show that the said W. H. Gowan

owned on the 15th day of December, 1889, and at that time of the tax levy sufficient personal property to pay and satisfy the taxes, assessments, and penalties charged against him. I have examined the testimony on this point very carefully, and must say that I concur fully in the conclusion reached by the master thereon.

The facts as recited show that the parties claim through W. H. Gowan as a common source of title. The plaintiff claims through the tax sale under sheriff's deed. The defendant claims through the foreclosure sale, and under the master's deed. The main question presented and to be determined is, which of the parties has the better title to the land in dispute? If nothing further was made to appear, there would hardly be room for doubt that the conclusion reached by the master is correct. For it is expressly declared by statutes (Gen. Stat., § 170,) that all taxes, assessments, and penalties legally assessed shall be considered and held as a debt, payable to the State by a party against whom the same shall be charged, and such taxes, assessments, and penalties shall be a first lien in all cases whatsoever upon the property taxed, etc.; and hence the lien for taxes would have been superior to the lien of the mortgage under which the land in question was sold by the master, and the purchaser at the tax sale would have taken a title free and discharged from the encumbrance created by the mortgage.

But the tax deed of the plaintiff is attacked on the grounds: 1. That the failure of the treasurer to make an effort to collect the taxes due by Gowan, between the 15th of December, 1888, and the 2d of January, 1889, rendered the deed to the plaintiff null and void. 2. That at the time the tax execution against Gowan was issued, as well as at the time the land was levied upon, he was the owner of personal property, and that it was the duty of the sheriff to have levied upon and sold this before levying upon and selling the land, and that his failure to do so rendered the deed to the plaintiff null and void. 3. That the property levied upon and sold by the sheriff to pay the taxes due by Gowan, was more than was necessary to pay said taxes, and that a sale of all the land owned by Gowan, without an effort to divide and sell a part, renders the deed of the plaintiff

null and void. 4. That at the time the plaintiff bought the land at tax sale he was attorney for Gowan in a suit then pending between Gowan and the defendant, in which the identical land was involved, and that when he bid off the same, he did so as the agent of Gowan, with full knowledge of the equities of the defendant, and that his title is fraudulent and void as against the defendant. And 5. That the lien of the defendant's mortgage is an older and better lien than that for taxes.

What I have already said, disposes of the second and fifth grounds of attack upon the tax deed of the plaintiff. The conclusion reached by the master ought not to be disturbed by anything contained in these grounds. Neither do I think there is anything in the third and fourth grounds to affect the conclusion of the master. Section 8 of the act to raise supplies and make appropriations for the fiscal year commencing November 1st, 1887, approved December 24th, 1887 (19 Stat., 870, 883), declares "that all taxes herein issued shall be due and payable from the 15th day of October to the 15th day of December, 1888, and the several county treasurers shall collect the same in the manner prescribed by law." Section 10 prescribes: "That when the taxes and assessments, or any portion thereof, charged against any property or party on the duplicate for the present fiscal year, shall not be paid on or before the 15th day of December, 1888, the county treasurer shall proceed to collect the same, together with the penalty of fifteen per centum on the amount so delinquent, and if the amount of such delinquent taxes, assessments, and penalties shall not be paid on or before the 2d day of January, 1889, or collected by distress or otherwise, then the same shall be treated as delinquent taxes on such real and personal property, and shall be collected by sale of such real and personal property according to law." Under this act, the county treasurer was required to begin the collections of the taxes for the fiscal year 1887–88 on the 15th day of October, 1888, and to continue to collect without penalty until the 15th day of December, 1888; after this latter date, he is required to proceed to collect the taxes and assessments charged against *any property or party* on the duplicate, together with a penalty of fifteen per centum on the amount delinquent, until

the 2d day of January, 1889; and if between the 15th day of December, 1888, and the 2d day of January, 1889, the amount of such delinquent taxes, assessments, and penalties shall not be paid or collected by distress or otherwise, then the same shall be treated as delinquent taxes on such real and personal property, and shall be collected by sale of such real and personal property according to law.

The law then in force regulating the sale of real and personal property for delinquent taxes is found in the act of 1887, "in relation to forfeited lands, delinquent lands, and collection of taxes." 19 Stat., 862. This act directs, that "immediately upon the expiration of the time allowed by the law for the payment of taxes in any year, the county treasurer of each county shall issue in the name of the State a warrant or execution against the defaulting tax-payers," etc. In the construction of this act, the language, "upon the expiration of the time allowed by law for the payment of taxes," is not altogether free from doubt. Two periods of time are fixed by the act to raise supplies for the fiscal year commencing November 1st, 1887, within which the tax-payer is allowed to pay—one embracing that period in which there is no penalty, the other after the penalty attaches. But giving the defendant the benefit of the doubt, and assuming that it refers to the former period, that immediately after the 15th day of December, 1888, it was the duty of the county treasurer to issue a warrant or execution against the defaulting tax-payer, I am of the opinion that a warrant or execution issued thirty-seven days after said date would not be such an irregularity, if irregularity at all, as would avoid a tax deed made in pursuance of a sale thereunder. The act of 1887, in relation to the sale of property for delinquent taxes, prescribes no specific time for tax sales. It only requires the sheriff to sell, after due advertisement, before the court house door of the county, on a regular salesday, within the usual hours of public sales.

The evidence shows that the taxes, assessments, and penalties charged against W. H. Gowan for the fiscal year 1887–88 were not paid or collected by distress or otherwise, on or before the 2d day of January, 1889; that the land in dispute was levied

on and sold, after due advertisement, before the court house door in Spartanburg County, during the legal hours of public sales; that the land levied on was then and there purchased by the plaintiff; that it only brought a sufficient sum to pay the taxes, assessments, and penalties charged against the property of W. H. Gowan ; that the purchaser at said sale complied with his bid, and received a conveyance to said land from the sheriff, and was put into possession of his purchase. Under this state of facts, I cannot hold that the mere fact that the county treasurer did not issue a warrant or execution against W. H. Gowan, the defaulting tax-payer, between the 15th day of December, 1888, and the 2d day of January, 1889 (even if the time for collecting taxes for said fiscal year had not been extended by the comptroller general), makes the sale thereunder irregular, and renders the tax deed in question null and void.

In this connection it may be well to dispose of another question raised in the argument by the defendant's counsel. It is contended that the treasurer issued his warrant and execution for an amount including the poll tax ; that the amount due for poll tax, with the fifteen per cent. penalty thereon, is not a lien on the land, and that the land was in no sense liable therefor, and that the levy on the land for this amount renders the deed void. It is true, that the act approved December 24th, 1887 (vol. 19, p. 882), in providing for a sale of the defaulting tax-payers' property for taxes, does not mention specifically the poll tax. Section 6 of this act, however, provides, "that there shall be assessed upon all taxable polls in this State a tax of one dollar." Section 10 provides that if the amount of delinquent taxes, assessments, and penalties charged against *any property* or *party* on the duplicate shall not be paid on or before the 2d day of January, 1889, or collected by distress or otherwise, the same shall be treated as delinquent taxes on such real and personal property, and shall be collected by a sale of such property according to law. The poll tax is a tax *assessed* against the *party*. The taxes, *assessments*, and *penalties* charged against *any property* or *party* on the duplicate, and not paid within the time allowed by law, are to be treated as delinquent taxes on the

real and personal property of the defaulting tax-payer, and
such property may be sold to satisfy the same.

This view does not appear to me to be in conflict with sec-
tions 11 and 12 of said act, and the fact that section 6 makes it
a misdemeanor for any person to fail or refuse to pay his poll
tax, does not take away the right of the State to enforce the
collection of such tax by distress or sale of the real and personal
property of the defaulting tax-payer, according to law. The
county treasurer, therefore, properly included in his warrant
or execution against W. H. Gowan the amount of the poll tax
and the penalty thereon, and the tax deed of the plaintiff is
not rendered null and void by reason thereof. This disposes
of the first ground of attack on plaintiff's deed.

The seventh exception of the defendant to the master's report
must now be considered. This exception charges the master
with error, "In holding that by the failure of Gowan and of
Cantrell to comply with the requirements of section 3 of the act
in relation to forfeited lands, delinquent lands, and collection
of taxes (19 Stat., 864), they must be deemed to have waived
all irregularities." I do not think the case falls within the
class intended to be included in section 3 of said act. This act
has been recently construed by the Supreme Court, in the case
of *Bull.* v. *Kirk*, 37 S. C., 395. In this case the court say: "As
we think, it appears that the legislature had in mind the classes
of tax-payers alleged to be in default; one, where the land of
the tax-payer had already been sold, and he was within the
two years allowed him to bring this action. This class was
manifestly intended to be covered by section 2. Another class,
where the tax-payer was allowed, not commanded, to make
application in a summary way (twenty days) to have the sale
of his lands suspended upon his alleging that the assessment
was improperly made against him, or that the taxes had been
paid. This class was intended to be covered by section 3, and
all the requirements of that section were made with reference
to that class, and intended to be limited to them."

The present case falls within that class covered by section 2
of said act. This being so, the tax deed of the plaintiff is only
*prima facie* evidence of the regularity of the preliminary pro-

ceedings prior to its execution, and may be attacked in the present action.   But while this is so, the burden is upon the defendant, who seeks to avoid the conveyance of the plaintiff, to prove that some of the essential requirements of the law have not been duly and fully complied with, and that the proceedings have not been regular.   This, I think, he has failed to do.   While, therefore, the master erred in holding that by the failure of Gowan and Cantrell to comply with the requirements of section 3 of said act, "they must be deemed in law to have waived all exceptions to the omissions, errors, and irregularities (if any there be) in the assessment of said tax and in all preliminaries to said sale, etc."   Yet the conclusion reached by him in his report, that the plaintiff is entitled to recover the land in dispute, is, in my opinion, correct.

It is, therefore, ordered, adjudged, and decreed, that the exceptions of the defendant to the master's report be, and the same are hereby, overruled, and that said report as herein modified be, and the same is hereby, confirmed, and that said report as thus modified stand as the judgment of the court.   Let the judgment for the plaintiff be entered accordingly.

The defendant appealed upon grounds which raised the points considered by this court.

*Messrs. Duncan & Sanders*, for appellant.

1. There was error in not holding plaintiff's deed to be void, as, at the time of the tax sale, he was attorney for Gowan, who owned the land then in dispute between Cantrell and Gowan in an action involving the validity of Cantrell's mortgage, under which Cantrell now claims title.   Weeks Attorneys, § 277; Big. Frauds, 281; 2 Johns. Ch., 120; 30 S. C., 248; 7 *Id.*, 201; 4 Rich. Eq., 167; 1 Lead. Cas. Eq., 210, 215; 1 McCord Ch., 547.   If Gowan could recover the land bought by his attorney at the tax sale, so could his mortgagee in a then pending action. 8 Ves., 344; 40 Eq. Rep., 56; 4 Laws. R. R. & P., § 2030; 1 Hill Ch., 355; Weeks Attys., § 274; 1 Black. Tax Titles, § 566; 2 Desty Tax., 930; 1. Cox, 134; 1 Am. St. Rep., 258; 60 Am. Dec., 705.

2. To get good title at a tax sale, all the requirements of the

tax acts must be strictly complied with. 1 Blackw. Tax Titles, (5th edit.), §§ 132–138, 161–166 ; 1 S. C., 192 ; Cool. Tax., 470, 284 ; 2 Desty Tax, 820 ; 2 Blackwell, §§ 1125–1127. The county treasurer did not proceed to collect the taxes within the time required by law. 19 Stat., 824, § 10 ; 34 S. C., 374 ; 19 Stat., 862, § 1 ; *Ibid.*, 883. There is no evidence that the comptroller general extended the time for payment of taxes. Findings of fact in a case like this are errors of law where there is no testimony to support such findings. 12 S. C., 610 ; 5 *Id.*, 189 ; 21 *Id.*, 55 ; 19 *Id.*, 211. There is no proof of an effort to collect the taxes out of the personal property returned by Gowan for taxation. 34 S. C., 468 ; 2 Desty Tax., 774 ; 1 Blackwell, § 340 ; 19 Stat., 862.

3. The deed is void for excessive levy and sale. 19 Stat., 863 ; 1 Blackwell, 140, 166, 541, 543 ; Cool. Tax., 284, 470, 496 ; 2 Desty Tax., 822, 869, 918 ; 4 Cranch, 403 ; 13 Wall., 506 ; 3 Allen, 535.

4. The land was not liable to sale for unpaid poll tax and penalty. Gen. Stat., § 170 ; 19 Stat., 884, § 10. Excessive sums intentionally included in the tax execution render the tax sale void. 2 Desty Tax., 872 ; 1 Blackwell, § 521. The deed is void because executed within ninety days after the sale. 15 S. C., 192 ; Gen. Stat., § 297 ; 2 Blackwell, §§ 736–7, 790 ; 2 Desty, 912.

*Messrs. Bomar & Simpson* and *Nicholls & Moore*, contra.

November 27, 1893. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. This is a law case, pure and simple, the sole purpose of the action being to recover a tract of land in Spartanburg County, described in the complaint as containing one hundred and fifty acres. The judgment of the Circuit Judge contains a statement of the case so full and clear, that any attempt to restate it could add nothing, and possibly tend to confuse. (The Circuit decree ought to appear in the report of the case.)

*First.* The plaintiff's abstract of title, as claimed, is very simple, as follows : (1) Both parties claim through a common

source, one Wade H. Gowan, who originally owned the land. (2) That the land in question was assessed for taxes of the fiscal year commencing November 1st, 1887, in the name of W. H. Gowan; that the taxes and assessments charged against him on the tax duplicate for said fiscal year not having been paid by him, or collected by distress or otherwise, on or before January 2, 1889, the county treasurer for said county issued his tax warrant or execution, in the form required by law for the collection of delinquent taxes, against the said W. H. Gowan; that the return of the sheriff, endorsed upon said warrant or execution, is to the effect, that the said W. H. Gowan had no personal property out of which the taxes charged could be made, and that he had seized, levied upon, and taken possession of 150 acres of land, the property of the said W. H. Gowan— the same here in controversy; that the amount of the taxes, assessments, and penalties stated in the warrant or execution is twenty-six dollars and forty-two cents ($26.42); that after due advertisement, the land levied on as aforesaid was sold by the sheriff on the salesday of August, 1889, before the court house door in said county, during the legal hours of sale; that at said sale Stanyarne Wilson, the present plaintiff, became the purchaser, as being the highest bidder therefor; that he complied with the terms of sale, and the sheriff executed to him titles bearing date August 10, 1889, which was duly recorded September 3, 1889, and was let into the possession thereof under this title.   Afterwards his tenants attorned to the defendant, and he brought this action to recover the land.

*Second.* The grounds on which defendant Cantrell resists recovery are as follows: That at and before the land was sold under the aforesaid tax execution, he, Cantrell, was conducting legal proceedings against the said Gowan, to foreclose a mortgage which he owned upon the identical land now in dispute, said mortgage bearing date as far back as 1883.   That in said proceeding he obtained a confirmation of the master's report, a final judgment, and an order for the sale of the land on August 14, 1889, and it was again sold by the master under that order on October 7, 1889, and he, Cantrell, being the highest bidder, for $655, the master made him title and let him into

possession.   And he now claims that, although the sheriff's deed to the plaintiff under the tax execution is older than his from the master, yet that, as his mortgage under which the order of sale was made had a lien before the tax execution existed, he has the better title.   We suppose that such might have been the case as against the lien of any ordinary junior judgment, but as against the lien of the tax execution, the law declares that: "All taxes, assessments, and penalties legally assessed shall be considered and held as a debt payable to the State by a party against whom the same shall be charged; and that such taxes, assessments, and penalties shall be a first lien in all cases whatsoever upon the property taxed," &c.   So that if this were all, there could be no doubt that the plaintiff would be entitled to recover the land.

But the defendant makes vigorous defence, alleging irregularities and illegality in the tax proceedings, and the purchase and acceptance of title thereunder by the plaintiff.   In his answer, among other things, the defendant states as follows : "Defendant admits that he claims the land described in the complaint through one Wade H. Gowan, said title being derived from a sale of said lands under an order of this court for the foreclosure of a mortgage over said land, in a proceeding instituted in this court by the plaintiff as attorney for the said Wade H. Gowan; that said mortgage is an older and prior lien on said land than the lien through which plaintiff claims title to said land.   That pending proceedings for the foreclosure of said mortgage, as hereinbefore stated, the said land was levied upon by the sheriff of this county, advertised and sold for taxes, and the same bid off by the plaintiff, who was at the same time the agent for the said Gowan, and if the plaintiff has any valid deed to said land, he holds the same as agent of the said Gowan.   That when the plaintiff bid off said land, he did so with full knowledge of the rights and equities of the defendant.   Defendant further says that the deed through which the plaintiff claims said land is defective and void, on account of the non-compliance with the laws of this State.   But that, notwithstanding this fact, as well as the others heretofore stated, defendant wishing to avoid the expense of a lawsuit,

offered to pay to plaintiff any money he may have paid out on account of taxes due on said land, but that said offer was refused," &c.

The cause was referred to the master to hear and determine all issues, and report his conclusions to the court, with leave to any party to except thereto. Accordingly the master took the testimony, including the whole record in the foreclosure proceedings in the case of Cantrell *vs.* Gowan, as well as the tax execution, and the sheriff's return of *nulla bona* as to personalty, and his advertisement of the sale and conveyance under it. After stating the important facts in the case, which appear in his report, he held "that the plaintiff was entitled to recover possession of the land in dispute, together with two hundred dollars damages. The case seems to be a hard one, but the defendant had his remedy in buying the property at the tax sale, or in paying the taxes before sale," &c. Upon exceptions to this report, the cause came on for trial before his honor, Judge Izlar, who, concurring in all the facts found by the master, and in his law except upon one point, pronounced judgment that the exceptions of the defendant be overruled, and that the report as modified be confirmed, and thus modified stand as the judgment of the court, &c. From this judgment the defendant appeals to this court upon numerous exceptions, which are all printed in the Brief (thirty in number); but as some of them are long, and state the same matter in different forms, we think that the points made may be more satisfactorily considered by condensing them into the following propositions in their natural order :

*First.* "That his honor erred in not ruling that when the plaintiff bid off the land at the tax sale, he was the attorney for W. H. Gowan, the then owner of the land, in a case then pending in the court between Gowan and the defendant in this action, involving the identical land, and the foreclosure of a mortgage given by Gowan thereon, and that his act in bidding off the land and taking a deed therefor to himself was unauthorized, illegal, and void," &c.

It is very true, that the relation of attorney and client is a responsible and delicate one, and the books of reports are full

of evidence of the determination of the courts to maintain with scrupulous care the integrity of that relation at all times and under all circumstances.   But we can not think it necessary in this case to comment on the numerous cases from different States, which the research of the defendant's counsel has enabled him to bring to our attention on the subject.   The general doctrine is no where better stated, as we think, than in 1 Am. & Eng. Enc. Law, page 959, as follows: "The relation of attorney and client being *quasi* fiduciary, all transactions between them to be upheld, must be *uberrima fides*, and to establish that such is the case, rests with him who would uphold the transaction.   The jealous care and scrutiny over such transactions extends to all gifts, conveyances, and contracts by the client, and all securities given by him pending the relation.   The foundation of the rule is the influence arising from the relation; so long, therefore, as the influence exists, the rule, of course, applies," &c.   As we understand it, the above is only another form of stating the principle as it has been declared in this State (see *Miles* v. *Ervin*, 1 McCord Ch., 545), where Chancellor David Johnson closed his well considered decree in the following words: "I conclude, therefore, that all contracts between attorney and client, in relation to the property in litigation, are not necessarily void on the ground of that relationship; but that to render it so, it must appear that it was used to the prejudice of the client.   As a matter of proof, it is impossible to lay down any rule as to what will or will not constitute a sufficient evidence of it," &c.

Taking this as the settled principle, did Mr. Wilson show the necessary good faith to his client?   The master found the facts as follows: "Mr. Wilson was representing Mr. Gowan in the foreclosure suit of Cantrell against him, when the land was sold for taxes, but he made purchase at sheriff's sale for himself, and Mr. Gowan is contented and satisfied with such purchase. Mr. Gowan has never made any complaint to the sheriff concerning the sale, nor did he do so while said land was advertised."   In these findings the judge concurred, and they are beyond review by this court.   *Miller Bros.* v. *S. C. Railway Company*, 33 S. C., 359.   Mr. Wilson was not the

general agent of Gowan, but had been engaged to make the legal defence in the mortgage suit, and, as it seems, he did his duty in that character, until the cause had been practically lost after the report of the master against Gowan in that case; and Gowan was not in the country, leaving neither money nor directions nor agent to pay the taxes on the land or to buy it. Having discharged his duty in the foreclosure suit without success, Mr. Wilson had no dealing with his client, but bid off the land publicly at sheriff's sale, paid the purchase money, and received titles. "The law looks with proper jealousy upon contracts between an attorney and his client, to the disadvantage of the client; but here there was no contract with the client." *LeConte* v. *Irwin*, 19 S. C., 558. And when it is further considered, that instead of the sale being to the disadvantage of Gowan, he makes no objection, but is "contented and satisfied" with the sale, and testified as a witness in behalf of the plaintiff, we must concur with the Circuit Judge, that there is nothing in this exception to affect the conclusion of the master. "In order to give these rules effect, it is necessary that the relation of attorney and client should exist between the parties. The mere fact, that the opposite party was an attorney, &c., is not enough. He must, then, have been the attorney of the complaining party." See Meacham on Agency, § 879.

*Second.* "That the failure of the treasurer to make an effort to collect the taxes due by Gowan between the 15th of December, 1888, and the 2d of January, 1889, rendered the deed to the plaintiff void," &c. It appears, that while the contest over Cantrell's mortgage was going on, the land in dispute was listed and assessed for the taxes of the fiscal year commencing November 1, 1887, in the name of W. H. Gowan, amounting to $26.42; and the same remaining unpaid, became derelict on January 2, 1889, the county treasurer issued his warrant on January 23d; and the sheriff having made return to the effect, that the defaulting taxpayer Gowan had no personal property out of which the taxes and penalties charged could be made, seized and sold the land on salesday in August, 1889. In this state of facts, the complaint is made that the

9—40

treasurer should have issued his warrant sooner, viz., on December 15th, 1888, or on January 2, 1889. The master found as follows: "The time for the payment of taxes was extended in 1887, and hence the treasurer was not compelled to make effort to collect taxes between December 15th, 1888, and January 2, 1889, nor, indeed, could he have done so. The facts show that he issued papers from his office as soon as he could do so according to law," &c. The judge, after stating fully the law upon the subject, held as follows: "Under this state of facts, I cannot hold that the mere fact, that the county treasurer did not issue a warrant or execution against W. H. Gowan, the defaulting taxpayer, between December 15, 1888, and January 2, 1889 (even if the time for collecting taxes for said fiscal year had not been extended by the comptroller general), makes the sale thereunder irregular, and renders the tax deed in question null and void," &c. We cannot say that this was error of law.

*Third.* "That the judge erred in not holding that at the time the tax execution against Gowan was issued, as well as at the time the land was levied upon, he was the owner of personal property, and that it was the duty of the sheriff to have levied upon and sold this, before levying upon and selling the land; and that his failure to do so rendered the deed to the plaintiff null and void." This was a question of fact, and it can not be necessary to say more than to state the finding of the Circuit Judge upon the subject as follows: "In addition to the foregoing facts, an effort was made on the part of the defendant to show that the said W. H. Gowan owned on the 15th of December, 1889, and at the time of the tax levy, sufficient personal property to pay and satisfy the taxes, assessments, and penalties charged against him. I have examined the testimony on this point very carefully, and must say that I concur fully in the conclusion reached by the master therein," &c. Exception disallowed.

*Fourth.* "That the deed is void, because the sheriff levied upon and sold the entire tract of one hundred and fifty acres of land without first making an effort to divide it and sell a part," &c. It is true, that there is considerable disparity between the quantity of land sold under the tax

execution and the amount of taxes paid; but that may have resulted from several causes—possibly from the low estimate generally placed on tax titles, or the neglect of the parties in interest to attend the sale and pay the taxes or purchase the land. The question now is, whether, in a case where no fraud or collusion is charged, that circumstance alone should be considered sufficient to invalidate the sale and the deed made under it. It seems that at one time it was the law of the State that, in selling lands for taxes, the collecting officer was limited to "the person offering to pay the taxes thereon for the least quantity thereof," to be cut off from the northwestern corner of the tract. As we understand, however, such is not now the law, but the warrant of the treasurer is lodged with the sheriff, to be executed like other process in his hands, "by distress and sale of the personal property; and if sufficient personal property can not be found, then by distress and sale of the land of the defaulting tax-payer," &c. See *The State ex rel. Snelling* v. *Turner*, 32 S. C., 348, and *Shell* v. *Duncan*, 31 *Id.*, 567. In the latter case of Shell, 1,200 acres of land was sold in a body to collect $113.70 for taxes, and no objection was made on that ground to the title.

It is true, the act of 1887 (19 Stat., 884), so often herein referred to, authorizes "the sheriff of the county to seize and take exclusive possession of so much of the defaulting tax-payer's estate, real or personal or both, as may be necessary to raise the sum of money named therein, and after due advertisement to sell the same, &c. * * * And after deducting from the proceeds of sale the amount of taxes and charges, to pay the excess, if any there be, to the defaulting tax-payer," &c. It is very obvious that the main object of this act was to collect, at all events, the taxes due the State. But we do not understand that in doing so, it was intended to limit the sheriff, on pain of destroying his own deed, to buying and selling only "so much" of the land as would produce the precise sum necessary to pay the taxes; for the act expressly provides, that "if there is any excess, it shall be paid over to the defaulting tax-payer." This certainly contemplated the possibility of an excess. Of course, a sacrifice of property is always to be

avoided if possible.   It would seem difficult, if not impractica-
ble, for the sheriff, a ministerial officer, without the necessary
machinery of law for that purpose, to determine in advance,
with any degree of certainty, how much land (to be sold under
a tax execution) would produce the precise sum required, and
no more.   But if, as argued, the power to sell "so much as
may be necessary," &c., imposed upon the sheriff the duty of
determining in advance what property he should sell—the
whole or some part thereof, as in his discretion he might think
best—it seems that he exercised that discretion by offering for
sale the whole tract of 150 acres.   The result showed that the
sale produced the exact amount required, leaving no excess.
Under these circumstances, we can not say that he so abused
his discretion as to avoid the sale.   As was said by the master :
"The form of execution set out in the statute provides that the
sheriff sell so much of delinquent's property as may be suffi-
cient to pay the taxes and costs, and it is urged that in this
case the land could have been divided and sold in separate
tracts, and that either one of them would have been sufficient.
The best answer to this is, that, under the circumstances, the
whole tract brought only enough to pay the taxes and costs.
It is not what the land is really worth, but what it would bring,
that should guide the sheriff in estimating how much he should
sell," &c.   Both the master and Circuit Judge found that the
levy and sale were not excessive, and that the advertisement of
the sale was regular ; and, therefore, we are constrained to
agree, that there is nothing in the levy, advertisement, or sale
which should invalidate the plaintiff's deed.

*Fifth.*  "It is contended that Mr. Floyd, the county treasurer,
issued his warrant and execution for an amount including the
poll tax, with the fifteen per cent. penalty thereon, and
that the same was not a lien on the land, which was in
no sense liable therefor ; and that the levy on the land
for this amount rendered the deed void," &c.   The poll tax
not paid, and, therefore, put into the warrant, with the penalty,
was a small item, and even if it should be stricken out as not
allowable, I confess I do not see how that could invalidate the
title of the purchaser, for the remainder of the execution would

be unaffected, and, as I suppose, be sufficient to sustain the sale. But we think that the Circuit Judge, in his decision below, shows very satisfactorily that the treasurer was right to include the "poll tax" among the other items in the warrant. After citing the acts upon the subject, he states his conclusion as follows: "The poll tax is a tax assessed against the party. The taxes, assessments, and penalties charged against any property or party on the duplicate, and not paid within the time allowed by law, are to be treated as delinquent taxes on the real and personal property of the defaulting tax-payer, and such property may be sold to satisfy the same. This view does not appear to me to be in conflict with sections 11 and 12 of said act, and the fact that section 6 makes it a misdemeanor for any person to fail or refuse to pay his poll tax, does not take away the right of the State to enforce the collection of such tax by distress or sale of the real and personal property of the defaulting tax-payer, according to law," &c. We can not say that this was error. We think that making the failure to pay the tax a misdemeanor, was intended to be "cumulative."

We also agree with the Circuit Judge, in holding that this case does not fall under section 3, but section 2, of the act of 1887, so often referred to; and is ruled by the case of *Bull* v. *Kirk*, 37 S. C., 395, which decides that, under the circumstances of this case, the sheriff's deed is only *prima facie* evidence of the regularity of the tax proceedings prior to its execution, and may be attacked. But while this is so, the burden is upon the defendant to prove that one or more of the essential requirements of the law have not been complied with, and that the tax proceedings have not been regular, which the defendant in this case has failed to do.

The case is in several respects a novel one, and involves an unusual number of points. The court has endeavored to consider all the important questions made, and feel excused. for saying, that they have been greatly assisted by the learned arguments of the counsel on both sides.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.