### DICKSON v. BURCKMYER (TWO CASES).

1. TAX—COUNTY TAX—LEGISLATURE.—Levy of county tax by legislature without levy by county fiscal authorities is valid.
2. IBID.—SCHOOL TAX.—THE COUNTY BOARD OF COMMISSIONERS have no power to do anything more than to see that school tax be entered for collection, and entry without action by the board does not affect its validity.
3. IBID.—"LEVY"—CONSTITUTION—COUNTY BOARD OF COMMISSIONERS. —"Levy," as used in sec. 6, art. XI., defined to confer only administrative power on board of county commissioners as to school tax.
4. IBID.—Rev. Stat., 1893, 288 (Code, 1902, 355), does not require the auditor to drop in calculation of taxes any fraction less than ½ mill in the levy, but that provision refers to amount of taxes.
5. IBID.—TAX SALES.—An error in taxes collected by execution of one dollar is too small to invalidate the sale of property under tax execution, it not appearing that such error interfered with payment by owner, or caused sale of more property than if true amount had been entered.
6. IBID.—IBID.—SHERIFF — EXECUTION.—It matters not whether sheriff attaches to tax sale deed under Rev. Stat., 1893, 347 (Code of 1902, 421), the original or duplicate execution, and such execution is valid, although the mandate does not contain the name of defaulting payer and amount of taxes.
7. IBID.—IBID.—A SHERIFF must "seize and take exclusive possession" of land which he levies on to sell for taxes.
8. IBID.—IBID.—JURY.—THAT SHERIFF made excessive levy for taxes,

unless so excessive as to indicate oppression from design or ignorance, should not disturb title of purchaser in good faith, but such issue is for jury, and the fact that the land sold for ten times as much as taxes, is not conclusive of the question.

9. TAX SALE—BID.—Purchaser at tax sale may assign his bid as in other sales.

10. IBID.—EXECUTION.—Failure of execution to specify amount of taxes to each fund does not invalidate sale.

11. IBID.—SHERIFF.—Sale for taxes must be made by sheriff for cash.

12. IBID.—Failure of defaulting taxpayer to have sale of land suspended, under 20 Stat., 32 (Code of 1902, 427), is not bar to action against purchaser at tax sale for possession of land within two years.

Before KLUGH, J., Beaufort, March, 1902.   Affirmed.

Two actions: (1) Eliza C. Dickson by J. M. Dickson, guardian *ad litem,* against Cornelius Burckmyer, H. G. Burckmyer and C. L. Paul, Jr.   (2) Marion Rush Dickson, by J. M. Dickson, guardian *ad litem,* against same defendants.   The plaintiffs allege that the tax deed in question was invalid for the following reasons:

"1. The fiscal authorities of the county of Beaufort failed and neglected to levy a tax for county purposes for the county of Beaufort for the fiscal year beginning January 1st, 1899, upon all the taxable property in said county or upon any part thereof, as required by article X., section 13, of the Constitution of South Carolina.

"2. The county board of commissioners of the county of Beaufort failed and neglected to levy a tax of three mills on the dollar upon all the taxable property in said county or upon any part of it, for the public schools for the county of Beaufort for the fiscal year beginning January 1st, 1899, as required by article XI., section 6, of the Constitution of South Carolina.

"3. There has been no valid levy for county or school taxes for the county of Beaufort for the fiscal year beginning January 1st, 1899, as required by law, and the execution issued to enforce the payment of such taxes is void.

"4. The auditor of the county of Beaufort entered upon

the tax duplicate for the fiscal year beginning January 1st, 1899, the sum to be levied upon the real estate of W. F. Proctor for county and school purposes, without having received from the officers or authorities legally empowered to determine the rate or amount of taxes to be levied for school and county purposes, statements of the rates and sums to be levied for the current year, as required by section 287, Revised Statutes (1893) of South Carolina.

"5. The real estate listed in the name of William F. Proctor, 975 acres, consisted of two separate tracts, to wit: the 'Cotton Hall Farm,' containing 600 acres, and the 'Winterdale Place,' containing 375 acres; and the said auditor failed and neglected to enter either upon his own duplicate or upon the duplicate for the county treasurer for said fiscal year the taxes upon each of said parcels of land, as required by sections 287 and 289 of the Revised Statutes (1893) of South Carolina.

"6. The said county auditor for said fiscal year assessed against the said property, listed in the name of W. F. Proctor, for all purposes added together a rate of taxation (14 1-4 mills) resulting in a fraction less than one-half mill; and failed to drop said fraction of one-fourth of one mill, as required by section 288 of the Revised Statutes (1893) of South Carolina.

"7. The said county auditor for said fiscal year entered upon his own duplicate and upon the duplicate for the county treasurer, against the said property listed in the name of W. F. Proctor, taxes for all purposes amounting to $34.49. Said property assessed at $2,350 would have been chargeable at the rate of 14 1-4 mills for all purposes, with taxes (if otherwise legal) to the amount of $33.4875. Said auditor has, therefore, overtaxed said property to the amount of one dollar and one-fourth of one cent, for which excessive and illegal amount the tax execution is void.

"8. That the county auditor of Beaufort County, upon the expiration of the time allowed by law for the payment of the taxes for said fiscal year, failed, as required by section

347 of the Revised Statutes (1893) of South Carolina, to issue a warrant or execution in duplicate against William F. Proctor, the alleged defaulting taxpayer, but on the contrary partially filled out an original and duplicate tax execution and delivered the original to the said sheriff, retaining the duplicate in his office, attached to the stub of his tax execution book. That the duplicate so retained as aforesaid by the treasurer is illegal and fatally defective, in that the portion of the same beginning with the words, 'These are, therefore' (as shown in the form set out in the above section of the Revised Statutes), is blank, with nothing thereafter except the signature of the treasurer and the name of the county; and the original, wrongfully attached to the deed delivered to defendants by the said sheriff, is similarly and in other respects defective and illegal.

"9. That the said sheriff annexed to the deed executed by him to the defendants, as aforesaid, the original tax execution and not the duplicate, as required by section 340, Revised Statutes (1893) of South Carolina.

"10. That the said sheriff has not levied, seized or taken exclusive possession of the whole or of any part of the real estate hereinbefore referred to. That upon receipt of the tax execution hereinbefore referred to from the county treasurer, the said sheriff sent the same, with a large batch of other executions, to Roger Pinckney, a magistrate of Beaufort County, for collection; that said Roger Pinckney entrusted the same to his constable for collection, who reported to him that he could not collect it; that said Roger Pinckney so reported to the sheriff and returned the execution; that the said sheriff took no further legal steps in the matter except to advertise and sell the land; that he never went upon the premises either in person or by deputy.

"11. That the taxes claimed to be due upon the entire 975 acres above described were only $34.49, the penalty of 15 per cent. amounted to $5.17, making a total of $39.66. On March 15, 1900, James M. Dickson, father of this plaintiff, sent, for the purpose of paying the taxes upon the said 975

34—67

acres, to the county treasurer, a check for $33.49, which the treasurer had in his hands at the time the said execution was issued, leaving a balance of the penalty only $5.17. That said sheriff was informed of said payment, but, notwithstanding, attempted to levy and sell the entire real estate of 975 acres for the payment of the amount alleged to be due, $39.66, and costs of levy, advertisement and sale. That said attempted levy and sale were in direct violation of section 349, Revised Statutes (1893) of South Carolina, which directs the sheriff to seize and take exclusive possession of only 'so much of the defaulting taxpayer's estate, real or personal, as may be necessary to raise the sum of money named therein.' That the said check was not returned by the treasurer to said J. M. Dickson until June 18th, 1900, after the alleged sale on June 5th, 1900.

"12. That on June 7th, 1900, the said sheriff notified the said J. M. Dickson that upon payment by him of $13.45, the balance claimed to be due, he, the sheriff, would withdraw the sale and forward receipt. That thereupon the said J. M. Dickson forwarded to the sheriff the said amount, which, however, was returned by the sheriff, with the statement that the land had been sold and that the purchasers demanded a deed for the same.

"13. That said attempted levy and sale were excessive, contrary to the spirit and letter of the law, and null and void.

"14. That at said alleged sale the said real estate was bid off by one C. L. Paul, Jr., at the price of $435. That he did not comply with the terms of sale.

"15. That the deed from the sheriff to the defendants, Cornelius Burckmyer and H. G. Burckmyer, is witnessed by C. L. Paul, Jr., who has an interest in said real estate. Said deed is, therefore, void.

"16. That the alleged execution fails to state the amount of taxes to each fund, as required by section 347, Revised Statutes (1893) of South Carolina, and directs the sheriff to collect more by $1.0025 than the entire property was liable for, as shown in 7, *supra*.

"17. That the sale of said real estate was not advertised according to law, and was not made for cash.

"18. That the title to said real estate was in the plaintiff at the time the taxes were or ought to have been levied and at the time the alleged execution was issued."

From Circuit order overruling demurrer, both parties appeal.

*Mr. T. P. Cothran,* for plaintiffs, cites: *Fiscal authorities of county should levy county tax:* Art. I., secs. 13, 29, Con.; art. X., secs. 2, 13, 3, 5, 6; 62 S. C., 23; 4 S. C., 455; Cooley Tax., 324; Blackwell, 155; 25 Ohio St., 520; Code, 1902, 353. *County board of commissioners should levy school tax:* Article XI., sec. 6; Cooley Tax., 2 ed., 42; 23 St., 157; Code of 1902, 354; 15 St., 658; 16 S. C., 11. *Amount due each tax fund should be entered on execution:* Code, 1902, 289; Cooley on Tax., 2 ed., 400; 2 Dest's Tax., 973; 25 Wis., 490; 17 Pa. St., 331; 13 Wall., 506; 22 Ala., 116; 38 Ia., 141; 14 Kan., 474; 63 Me., 381; 61 Md., 545. *Error to calculate fraction of mill less than 1-2:* Cooley on Tax., 2 ed., 430, 431; Blackwell, 160, 161; 10 Mass., 115. *Execution is void because mandate is not filled in:* Code of 1902, 421; 17 Ency., 2 ed., 539; 10 Id., 318; 49 E. C. L., 93; 9 S. Dak., 159; 54 Ind., 31; 55 Md., 450; Cooley on Tax., 2 ed., 481. *Plaintiffs are not barred by failure to take steps to suspend sale:* Code, 1902, 427; 37 S. C., 395; 40 S. C., 114; 62 S. C., 503.

*Mr. Wm. Elliott, Jr.,* for defendants, cites: *County authorities not required to levy county taxes:* Art. X., sec. 13; 62 S. C., 33. *Nor school taxes:* Art. XI., secs. 6, 13. *Omission to list tracts separately is not fatal:* 25 Ency., 1 ed., 223. *Small excess in amount of tax is not fatal:* 40 S. C., 132; 14 Rich., 266; 23 Cal., 287; 62 N. Y., 362; 62 Miss., 748; 7 Ohio, pt. II., 191. *Omission to fill blanks in mandate of execution is not fatal:* 54 S. C., 518; 14 Rich., 266. *Where*

*whole land is sold, sheriff need not take possession:* 27 S. C., 395. *Sheriff not required to accept check for taxes:* Black on Tax Titles, sec. 160; 4 Mack., 339. *Levy not excessive:* 40 S. C., 14; 31 S. C., 567; 46 S. C., 290; Black on Tax Titles, sec. 107; 25 Ency., 387. *Failure to specify on execution each tax fund is immaterial:* 50 S. C., 466.

November 28, 1903. The opinion of the Court was delivered by

MR. JUSTICE WOODS. The plaintiffs in these two cases sue separately to recover different parcels of land, but the action in other respects being based on the same allegations of fact, and involving the same legal questions, were heard together by consent in the Circuit Court and in this Court. The defendants demurred to each of the complaints on the ground that it did not state facts sufficient to constitute a cause of action. In overruling the demurrers, the Circuit Judge decided a number of interesting questions, and both sides have appealed.

It appears from the complaints that one Wm. F. Proctor was the owner of two tracts of land in Beaufort County, known as "Cotton Hall Farm" and "Winterdale Place," containing respectively 600 acres and 375 acres; and that on November 15th, 1898, he conveyed "Cotton Hall Farm" to the plaintiff, Marion Rush Dickson, and "Winterdale Place" to the plaintiff, Eliza DeC. Dickson. Under his conveyances they seek to recover in these actions the lands from the defendants, Cornelius Burckmyer and H. G. Burckmyer, who, as the complaints allege, claim title by virtue of a purchase of both tracts together as one tract at a sale made by the sheriff of Beaufort County under a tax execution against W. F. Proctor, issued for taxes claimed to be due for the fiscal year beginning January 1st, 1899, the sheriff's deed therefor having been executed on or about June 18th, 1900.

The plaintiffs, under eighteen different heads, allege facts concerning the levy and assessment of the taxes and the sale by the sheriff, which they insist make the sale illegal and

void. The demurrers raise the question whether, assuming these allegations to be true, the defendants' title would be defeated by any or all of them. The grounds upon which the tax title is assailed, as stated by the plaintiffs, will be printed in the report of the cases, and we proceed to their consideration without quoting the complaint or the exceptions. In considering these grounds, it should be borne in mind that the right to tax property, so essential to the very existence of government, can be enforced under the laws of this State, only by subjecting property to sale for non-payment of taxes assessed against it. To hold tax sales invalid for slight and technical irregularities, would, therefore, be to unreasonably embarrass the State in the collection of its revenue. The sound view is that all requirements of the law leading up to tax sales, which are intended for the protection of the tax-payer against surprise or the sacrifice of his property, are to be regarded mandatory and are to be strictly enforced. On the other hand, those provisions of the statute, designed merely for the guidance of the officer in order to secure the due and orderly conduct of the public business, concern the State only, and as to the individual taxpayer are to be regarded directory; and the Courts will not in his behalf declare a tax sale void for failure by the officer to follow the strict letter of such provisions of law. Cooley on Taxation, 471; *French* v. *Edwards,* 80 U. S., 510. The questions here involved should be considered in view of this general principle.

The plaintiffs' first position is that, although the tax levy for county purposes for the year 1899 was fixed by the General Assembly, the tax sale was of no effect because the fiscal authorities of Beaufort County failed to levy this tax, as provided by article X., section 13, of the Constitution of the State. We agree with the Circuit Judge, that the case of *Railway Co.* v. *Kay,* 62 S. C., 28, 39 S. E., 785, is directly opposed to the plaintiffs' view.

The next question is whether there was a valid levy of the three mills school tax, provided by article XI., section 6, of

the Constitution, in these words: "The existing county boards of commissioners of the several counties, or such officer or officers as may hereafter be vested with the same or similar powers and duties, shall levy an annual tax of three mils on the dollar upon all taxable property in their respective counties, which tax shall be collected at the same time and by the same officers as the other taxes for the same year." * * * Section 13 of "An act to raise supplies, etc.," for the fiscal year commencing January 1st, 1899, 23 Stat., 157, is as follows: "That the county board of commissioners in each of the several counties of this State shall levy a tax of three (3) mills on the dollar upon all taxable property of their respective counties, for the support of public schools in their respective counties, which shall be collected at the same time and by the same officer as the other taxes for this year, and shall be held in the county treasuries of the respective counties and paid out exclusively for the support of public schools, as provided by law." This school tax was charged against the land in dispute by the county auditor; but the complaint alleges no levy was made by the county board of commissioners.

Whether this was a legal tax, depends upon the meaning to be given to the word "levy," as used in the sections of the Constitution and of the statute above quoted. Does it import that some distinct official action by the county board of commissioners was necessary before the tax could be entered for collection? It will be observed that the Constitution is mandatory in requiring the levy to be made by the county board of commissioners, and leaves no discretion of any kind to that board. After much consideration, the Constitutional Convention of 1895 rejected a proposition to require the General Assembly at each regular session "to empower and authorize" the county board of commissioners to levy an annual tax "not exceeding three mills." In the most explicit language, the Constitution has thus made the three mill school tax a permanent charge on all property, not to be lessened by any official action short of constitutional

amendment.    Fixing the rate of taxation and ordering that it shall be levied, is the creation of the tax.    This excludes from the act of *levying,* which is required of the county board of commissioners, any signification of creation.    The duty to levy imposed on the board is, therefore, purely ministerial, and only imports that it should take such action as would result in the tax being placed on the auditor's books.    This could be done by serving on the auditor a resolution directing him to enter the tax, or in any other appropriate method.    In other words, the ministerial action required of the board is to aid in the collection of the tax by taking steps to have the tax entered on the books containing the tax levy.    The county boards of commissioners have no power to do anything more or less than require that the tax be entered; and if it is entered without the formality of the requirement, it seems quite manifest that their formal mandate becomes unnecessary, and its absence does not affect the legality of the entry.

This conception of the meaning of the word levy, as here used, is supported by the following very clear statement of the distinction by Associate Justice Gary, in the case of *Railway Co.* v. *Kay, supra:* "The word 'levy,' as hereinbefore shown, is frequently used in more than one sense, and its meaning in a particular instance is to be determined by resort to the context.    It is sometimes used for the purpose of conferring all the powers incident to the creation and collection of a tax; as when 'corporate authorities are vested with power to assess and collect taxes for corporate purposes,' while, again, it is only intended to confer administrative powers in the collection of the tax, without reference to its creation, and this is the sense in which it is used in the 13th section.    By this construction alone can force and effect be given to all the foregoing provisions of the Constitution.    It will be observed that the 13th section makes no reference to the *creation* of the tax, which only could be done by the General Assembly, or by the county after the General Assembly had 'vested it with power to

assess and collect taxes for corporate purposes.' The intention was that the taxes for the subdivisions of the State should be *collected* by the respective fiscal authorities thereof, whether imposed by the General Assembly or the corporate authorities of counties, &c., when vested by the General Assembly with power to assess and collect taxes for corporate purposes." See, also, Cooley on Taxation, 325, note. For these reasons, we think the first, second, third and fourth grounds assigned by the plaintiffs for alleging the tax title invalid are unsound.

The plaintiffs' fifth position is that the land which was sold as the property of Wm. F. Proctor consisted of two tracts, and the county auditor entered them for taxation as one tract and not separately. The complaint fails to allege that they were returned for taxation as separate tracts, or that they were not contiguous, or that they were separate from each other in any respect except in the names by which they were called. There is no sufficient allegation that the auditor entered two distinct parcels of real property as one, in violation of section 289 of Revised Statutes of 1893 (Code of 1902, 356).

The sixth allegation against the tax title is that the aggregate per cent. of taxation was fourteen and one-fourth mills, and the auditor, under section 288, of Revised Statutes of 1893, should have disregarded the fraction of one-fourth of a mill in his computation. This construction of the statute is obviously erroneous. The meaning of the law is that where the sum resulting from the computation of the tax on any particular parcel of property requires for its exact expression any fraction less than a half mill, such fraction shall be dropped.

The plaintiffs in their seventh objection allege the assessment of the property to have been $2,350, upon which the tax should have been computed at fourteen and one-fourth mills, making $33.4875, whereas the sum of $34.49 was charged and execution issued therefor. There is no allegation that Proctor, the owner, was exempt

from poll tax, and the one dollar excess may be referred to this liability. Cooley on Taxation, 498, note. The case of *Wilson* v. *Cantrell,* 40 S. C., 131, 18 S. E., 517, holds the poll tax is properly included in the execution against property. Taxes cannot, however, be held to constitute a lien on property without statutory authority. *Barker* v. *Smith,* 10 S. C., 228. The statute does not expressly or by implication make the poll tax a lien on the property of the taxpayer. The land in this case had been conveyed away before any attempt to levy under the execution was made, and it would have been illegal to levy on and sell the land to enforce the collection of the execution, if it had been based on the grantor's poll tax alone. If, on the other hand, the alleged excess arose from an error in calculation, we are not prepared to say an excess of one dollar in an aggregate tax of $33.49 is sufficient to invalidate the sale. It is true, the sheriff is required to levy on so much property as may be sufficient to satisfy the taxes, and if the taxes are increased by illegal additions, the taxpayer suffers injury by reason of the greater quantity of property it becomes necessary to seize and sell in order to satisfy the execution. *State* v. *Hodges,* 14 Rich., 256; Cooley on Taxation, 429; 25 Am. & Eng. Ency. Law (1st ed.), 387. But the error here was too small for the Court to suppose it would have interfered with payment by the owner and recovery of the excess, under section 340 of Revised Statutes of 1893, or that it led to the sale of any more property than would have been sold if the execution had been issued for the true amount. The allegations of the plaintiffs in the seventh ground of their attack, if established, would not defeat the tax title.

Section 347, Revised Statutes 1893 (Code, 1902, 421), requires the auditor to issue tax executions to the sheriff in duplicate, and provides that the executions shall "run substantially" in the form therein prescribed. In case of sale, the sheriff is directed to attach the duplicate to the title. It is alleged here that only the original was given to the sheriff, and he attached this instead of the

duplicate to the deed.   This was a mere irregularity, which could not possibly be prejudicial to the taxpayer.   The law in this regard was intended to provide proper evidence of the sale, in the interest of the State and of the purchaser.   In no case could it be of consequence to the taxpayer whether the original or the duplicate was attached to the deed.

It is also alleged the original and duplicate forms of execution were only partially filled out, the name of the defaulting taxpayer and the amount of the tax not being inserted in the printed form of the mandate.   It is true, that an execution without a mandate is usually regarded void.   Freeman on Executions, 38.   In this case the execution stated the tax and the name of the person who had made default.   We do not think the mere omission to repeat the amount and the name in commanding the sheriff to levy would invalidate the execution.   In *Kingman* v. *Glover*, 3 Rich., 27, the Court says: "If the process which the tax collectors are authorized to issue, does, in substance and effect, comply with the provisions of law, and afford to the owner of property the notice which may be necessary for its protection, formal and technical exceptions may, without inconvenience or danger, be disregarded."   We think, therefore, the execution was valid, notwithstanding these alleged irregularities, and the eighth and ninth objections to the tax title are not well founded.

The next allegation is that the sheriff failed to "seize and take exclusive possession" of the land.   The general rule is that actual seizure of possession by the officer is not necessary to a levy where the debt which is the basis of the execution is a lien on the property.   Freeman on Executions, sec. 280.   In this State, the entry of the levy on an execution issued on a judgment has been held sufficient on the ground that no statute requires actual entry and possession of the land.   *Martin* v. *Bowie*, 37 S. C., 115. A tax execution stands upon an entirely different footing, because the statute explicitly requires the sheriff to "seize and take exclusive possession" under such an execution. "Under and by virtue of said warrant or execution, the

sheriff shall seize and take exclusive possession of so much of the defaulting taxpayer's estate, real or personal, or both, as may be necessary to raise the sum of money named therein and said charges thereon, and, after due advertisement, sell the same, etc." (Revised Statutes of 1893, sec. 349, Code of 1902, 349.) The requirement is one which greatly concerns the defaulting owner of the land, for the seizure and taking possession by the sheriff is a notorious act, which tends to give the defaulter and the community notice of the intended sale and thus prevent a sacrifice of the property. We think the tenth objection to the title is well founded.

The eleventh, twelfth, fifteenth and eighteenth objections were not sustained by the Circuit Judge, and the plaintiffs very properly acquiesced in his conclusion as to them.

The thirteenth position taken is that the levy for a tax of $33.4875 on 975 acres of land, which sold for $435, was an excessive levy. The sheriff cannot be expected to know in advance exactly how much land it will be necessary to sell to collect the amount due on process in his hands. It does not follow as a matter of law that the levy was excessive because the land sold for even ten times the amount of the debt, for land sometimes sells for much more than even the best judges expect. The sheriff is required to seize sufficient property, and it is a question of fact whether he has exercised a reasonable discretion. The title of a purchaser who has bought in good faith at a tax sale should not be disturbed because the sheriff levied on more property than was necessary, unless the levy was so excessive as to indicate oppression arising from design or inexcusable ignorance. Freeman on Executions, 253. The plaintiffs are entitled to have this issue submitted to the jury.

As we understand, the plaintiffs take the position in their fourteenth objection to the tax title, that C. L. Paul, Jr., who bid off the land, could not make a legal assignment of his bid to the defendants to whom the sheriff made title. There are authorities sustaining this position, where the assignment of the bid was made before the time

for redemption by the owner had elapsed, on the ground that until the owner had lost his right of redemption, the purchaser had only a contingent right to the title, which in law is not assignable.    In this State, there is no right of redemption after sale, and the purchaser has a right to demand the title as soon as his bid is entered and complied with.    There is, therefore, no reason why he may not assign his bid as in other sales.    Blackwell on Tax Titles, 374.

The sixteenth ground of attack, that the tax execution did not specify the "amount of taxes to each fund," as required by the statute, must be held not well founded, on the authority of *Association* v. *Waters,* 50 S. C., 466, 27 S. E., 948.

The plaintiffs' seventeenth objection is thus stated: "That the sale of said real estate was not advertised according to law and was not made for cash."    The allegation as to the advertisement is a mere conclusion of law without a statement of the facts upon which it is founded; but the direct allegation that the sale was not made for cash, if established, would be fatal to the validity of the sale, and is not demurrable.

The position taken by the defendants, that the failure of the plaintiffs to have the sale suspended under section 3 of the act of 1888 (XX. Stat. at Large, 52), is a bar to these actions to recover possession of the lands, is disposed of by the case of *Bull* v. *Kirk,* 37 S. C., 400, 16 S. E., 151.

For the reasons above stated, all the plaintiffs' exceptions and the defendants' eighth, twelfth and fifteenth exceptions are overruled; and the defendants' first, second, third, fourth, fifth, sixth and seventh exceptions are sustained. The defendants' ninth and tenth exceptions are disposed of in the discussion of the plaintiffs' fifth and thirteenth objections to the tax title.    As to the thirteenth exception of the defendants, it is sufficient to say that the presiding Judge did not hold that the sheriff's deed was not *prima facie* evidence of good title in the holder; but inasmuch as specific irregu-

larities were pointed out in the complaint, it became neces-
sary for him to consider their effect on the title. Defend-
ants' fourteenth exception and the several subdivisions of
their eleventh exception are substantially covered by their
other exceptions, and are embraced in the foregoing discus-
sion and adjudication. The result is that the judgment
of the Circuit Court overruling the demurrers is affirmed,
and the cause remanded to the Circuit Court for trial.