0973

W. L. PATTERSON, Jr., a/k/a W. L. Patterson, Appellant v. Edward A. GOLDSMITH, Eliza Jackson and Emanuel Jackson, Respondents.

(358 S. E. (2d) 163)

Court of Appeals

*John R. Ferguson,* Laurens, *for appellant.*

*Ray D. Lathan,* Greenville, *for respondents.*

Heard April 15, 1987.

Decided June 8, 1987.

CURETON, Judge:

Appellant W. L. Patterson commenced this action against respondents Edward A. Goldsmith, Eliza Jackson, and Emanuel Jackson to clear title to property he purchased at a tax sale. The Master in Equity for Greenville County invalidated the tax deed. Patterson appeals. We reverse.

Goldsmith purchased the property, a duplex rental apartment, during the 1960s for $10,000.00. The County real property taxes were not paid for this property in 1979 and 1981. Accordingly, the County Treasurer directed the Delinquent Tax Collector to levy upon the property. The back taxes totalled $270.67.

The property was advertised for sale by the Tax Collector in *The Greenville News.* Employees of the County testified they mailed a notice by regular mail to Goldsmith and posted a Notice of Seizure, Levy and Tax Sale on the property. Goldsmith and a sister who lived with him, Edesteen Locke, both testified they checked on the property at least once a week and no notice was ever posted. The property was sold to Patterson at public auction on June 7, 1982 for $600.00. Goldsmith testified the property was worth $50,000.00. Goldsmith did not redeem the property within the twelve month statutory redemption period. The record reveals that during this period Goldsmith continued to receive rents of $400.00 per month on the property. The Jacksons were made parties to the action because Goldsmith deeded the property to them for a nominal consideration on June 8, 1982, the day after the tax sale. Mrs. Jackson is Goldsmith's sister.

On May 31, 1983, the Tax Collector erroneously sent Goldsmith a reminder of the sale and a notice of his right to redeem the property. According to the notice the property could be redeemed "in the next thirty days." Goldsmith received this letter on June 8, 1983, one day after the statutory redemption period had actually expired. On June 15, 1983, Mrs. Locke paid the 1982 taxes on the property for Goldsmith and the Jacksons. She testified that she was under the impression she was redeeming the property. Upon notification from the Tax Collector that the back taxes were still owing, she delivered the payment for the 1979 and 1981 back taxes on July 5, 1983. Based on these payments, the Tax Collector marked the property redeemed and returned Patterson's bid money plus interest. Patterson objected, and the Tax Collector reversed his decision and issued Patterson a deed on October 6, 1983.

Patterson commenced this action to clear title to the property in January 1984. Goldsmith and the Jacksons claimed they were not afforded proper notice of the levy and execution and that they were misled by lack of notification and by the improper notice from the County. They cross-claimed against Greenville County for reconveyance of the property or compensation for its fair market value. The present action was stayed while the respondents pursued their cross-claim against the County. In *Patterson v. Goldsmith*, 288 S. C. 551, 343 S. E. (2d) 661 (Ct. App. 1986), this Court determined that the County had neither a duty nor the authority to notify a delinquent taxpayer of the approaching end of the redemption period. Therefore, the improper notice of redemption was an ultra vires act and could not operate to estop the County from exercising its legitimate right to sell the property. On July 17, 1986, Patterson filed a motion to dismiss or for summary judgment on the ground this decision collaterally estopped Goldsmith and the Jacksons from relitigating these issues. Both motions were unsuccessful.

The case was heard before the master pursuant to an order of reference appealable to the Supreme Court. Following testimony, the master issued an order on September 15, 1986. He found the tax deed should be invalidated because of inadequate consideration, the County's misleading actions

through the erroneous notice of the right to redeem, the failure of the Tax Collector to take exclusive possession of the premises or provide adequate notice to Goldsmith and the Jacksons, and Patterson's failure to notify the respondents of the imminent loss of their property during the twelve month redemption period.

## COLLATERAL ESTOPPEL

Patterson first argues Goldsmith is barred by collateral estoppel from relitigating the propriety of the procedures followed by the Tax Collector. He argues the decision of this Court in *Patterson v. Goldsmith, supra,* held the county seized and sold the subject realty pursuant to statutory requirements and consistent with due process. The master denied Patterson's motion to dismiss or for summary judgment on the basis of collateral estoppel, and subsequently found the County did not comply with the statutory requirements for the tax sale.

In *Patterson v. Goldsmith, supra,* Goldsmith's cross-complaint against the County sought reconveyance of the property or compensation for its fair market value. The allegations of the complaint rested on alternate theories of estoppel and "wrongful taking" caused by lack of notification and misleading notification. The trial court overruled the County's demurrer premised on the assertion it was not required to give notice of redemption, and therefore could not as a matter of law be held liable for such an act. The dispositive issue decided by this Court on appeal was whether the County's act in sending the improper notice of redemption operated as an estoppel against the County. We held that since the notice of redemption was an unauthorized, ultra vires act, it could not provide the basis for estoppel against the County. The Court further noted that since the property was sold pursuant to proper authority under the provisions of Section 12-49-460, Code of Laws of South Carolina, 1976, there was no merit to the assertion that the County deprived Goldsmith and the Jacksons of property without due process of law.

The doctrine of collateral estoppel precludes a party and his privy from relitigating an issue which was outcome determinative in previous litigation. *Irby v. Richardson,* 278

S. C. 484, 298 S. E. (2d) 452 (1982). The doctrine operates where the party has previously had a full and fair opportunity to litigate the question. *Id.* In our opinion, collateral estoppel does not apply to this case. As we have indicated, the dispositive issue in the first appeal was whether the act of sending an incorrect notice of redemption operated to estop the County. While Goldsmith admitted there was no specific statutory notice requirement providing for redemption of property sold for delinquent taxes, he argued the gratuitous notice by the County should nevertheless operate as an estoppel. This Court disposed of that argument by holding that since no notice was required under the Code, the notification actually given was an ultra vires act and estoppel would not lie against the County for such an act.

In disposing of Goldsmith's argument that his property was taken without due process of law, we held the argument was without merit in the prior case because the cross-complaint showed the County sold the property "pursuant to the authority conferred upon it by the Code." We made no determination that the procedures actually followed by the Tax Collector were in compliance with the Code. We affirm the master's denial of Patterson's motion for a dismissal or for summary judgment on the ground of collateral estoppel.

### STATUTORY COMPLIANCE

The master found that the statutory procedures for tax sales were not strictly followed and the tax deed should be set aside. Specifically, he found that the County's single act of simply tacking the notice of sale on the property, without further notice to the owner, did not satisfy the statutory requirement to take exclusive possession of the property.[1] He held that the County failed to give reasonable notice as required by due process and statutory law. Patterson argues the County acted in compliance with statutory procedures. We agree.

The courts have consistently held the enforcing agencies of government to strict compliance with all the legal requirements surrounding tax sales. *Dibble v. Bryant*, 274 S. C.

---

[1] The Notice of Seizure, Levy and Tax Sale is a single document. The taxing officials testified this document was posted on the property.

481, 265 S. E. (2d) 673 (1980). The pertinent section at issue here, Section 12-49-460, Code of Laws of South Carolina, 1976, requires the sheriff to:

(1) Seize and take exclusive possession of so much of the defaulting taxpayer's estate, real, personal or both, as may be necessary to raise the sums of money named therein and such charges thereon. . . .

The cases construing the requirement of exclusive possession have stated that:

[i]t is sufficient for the sheriff or his regularly appointed deputy to enter upon such real estate, armed with the tax execution, exhibit it, and notify the owner that under the authority of the execution he has seized and taken possession of the land in his official capacity. This step constitutes the levy, and gives to the sheriff that lawful possession contemplated by the statute. The mere occupancy of the land thereafter by the owner, until redemption or consummated sale, is not in derogation of the sheriff's possession, but is subordinate thereto.

*Glymph v. Smith*, 180 S. C. 382, 388, 185 S. E. 911, 913 (1936); see *Dibble v. Bryant*, supra, *Southern Region Industrial Realty, Inc. v. Timmerman*, 258 S. C. 142, 328 S. E. (2d) 128 (Ct. App. 1985).

In *Southern Region Industrial Realty, Inc. v. Timmerman*, supra, this Court held that the statutory requirement of taking exclusive possession was satisfied by the sole act of levying upon the property by the deputy going upon the tract and posting a "For Sale" sign and a "Notice of Seizure" sign. The Court then held that additional, separate acreage which had not been posted or entered in any way did not meet the requirement as interpreted in *Glymph*. To support his finding that the County did not take exclusive possession in this case, the master cited *Dibble* for the proposition that the single act of tacking the notice of sale on the property did not give the reasonable notice required by due process and the statute. *Dibble* held that in that particular case, the sole act of tacking a notice of sale *in the name of the prior*

*owner to the front of an abandoned building* failed to give reasonable notice to the parties in interest as required by the statute. These additional facts easily distinguish *Dibble* from this case, where there was neither an abandoned building nor was the notice of seizure in the name of the prior owner.[2] In our opinion, *Dibble* did not change the prior case law interpretation of exclusive possession as stated in *Glymph.*

Although Goldsmith and his sister testified they did not see the notice, a representative from the Tax Collector who actually posted the property testified to his actions. The master evidently found the property had been posted since he held the single act of posting did not give reasonable notice. While on an appeal of an equitable action tried before a master authorized to enter final judgment this Court must review the entire record and make its own findings in accordance with the preponderance of the evidence, *Thomas v. Mitchell,* 287 S. C. 35, 336 S. E. (2d) 154 (Ct. App. 1985), the conclusions of the master who observed the demeanor and appearance of the witnesses have peculiar value on questions of credibility of witnesses. *Crewe v. Blackmon,* 289 S. C. 229, 345 S. E. (2d) 754 (Ct. App. 1986). Although the master stated that the Tax Collector admits by his own testimony the County did not take exclusive possession of the premises, there is no support for this statement in the record. The evidence supports the conclusion that the property was properly posted, and under the case law, the County's actions in posting the property for sale constituted compliance with the statutory requirement of exclusive possession.

Finally, although the master made no such finding, Goldsmith argues the County also failed to comply with Section 12-49-460(1) by selling more property than was required to pay the delinquent taxes. This argument was not raised before the master. An issue which was not raised below cannot be considered on appeal. *American Hardware Supply Co., Inc. v. Whitmire,* 278 S. C. 607, 300

---

[2] We also note that the court in *Dibble* observed that there was an outstanding mortgage lien on the property and the mortgagee had received no notice of the sale.

S. E. (2d) 289 (1983). In any event, we reject this argument. The question of excessiveness is a question of fact with no fixed guidelines as to what constitutes an excessive levy. *Southern Region Industrial Realty, Inc. v. Timmerman, supra.* Goldsmith presented no evidence that the property in this case, which he testified to be a duplex apartment on a small tract of land, was divisible. *See, Southern Region Industrial Realty, Inc. v. Timmerman, supra.* We find no merit in this argument.

## ADEQUACY OF CONSIDERATION

After recognizing the fact that there is no case in this state holding that inadequacy of price alone is sufficient to void a deed, the master held that inadequacy of price combined with the other inequitable features of this case justify setting aside the tax deed. The other features relied upon by the master are: (1) the actions of the Tax Collector in misinforming Goldsmith of the end of the redemption period; (2) the fact that the Tax Collector took exclusive possession of the property by the simple act of posting the execution and levy on the property; and (3) Patterson's failure to notify Goldsmith prior to the termination of the redemption period that he had a right to redeem the property. The master equates the latter action of Patterson to fraud.

We reject the holding of the master for the reason that inadequacy of consideration is an affirmative defense which was not pled by Goldsmith. *See,* Section 15-13-420, Code of Laws of South Carolina, 1976; S. C. R. Civ. P. 8(c). A court's judgment must conform to both the pleadings and proof, and be in accordance with the theory of action on which the pleadings are framed and the case was tried. *Glass v. Glass,* 276 S. C. 625, 281 S. E. (2d) 221 (1981); *Michel v. Michel,* 289 S. C. 187, 345 S. E. (2d) 730 (Ct. App. 1986); *Crocker v. Crocker,* 281 S. C. 154, 314 S. E. (2d) 343 (Ct. App. 1984). By rendering his decision on a basis not advanced by the pleadings, the trial judge denied Patterson the opportunity to defend against the entry of the judgment on the ground on which the order rested. *Michel v. Michel, supra.*

We also disagree with the master that application of the general law regarding inadequacy of consideration requires

the deed in this case to be set aside. It is universally agreed that inadequacy of consideration alone is not a sufficient basis to cancel a deed. 13 Am. Jur. (2d) *Cancellation of Instruments* Section 25 (1964); Annot., 5 A. L. R. 4th 794 (1981). However, gross inadequacy of consideration when combined with other inequitable circumstances may justify the setting aside of a deed. *Bunch v. Hurst*, 3 S. C. Eq. (3 Des.) 273 (1811); *see* Annot., 5 A. L. R. 4th 794 (1981). We think that the best statement of the rule is expressed in an opinion by the Georgia Supreme Court:

> Inadequacy of price paid upon the sale of property under power [foreclosure sale] will not of itself and standing alone be sufficient reason for setting aside the sale. It is only when the price realized is grossly inadequate and the sale is accompanied by either fraud, mistake, misapprehension, surprise or other circumstances which might authorize a finding that such circumstances contributed to bringing about the inadequacy of price that such a sale may be set aside by a court of equity. [citations omitted].

*Giordano v. Stubbs*, 228 Ga. 75, 184 S. E. (2d) 165 (1971); *accord, Purnell v. Follett*, 555 S. W. (2d) 761 (Tex. Civ. App. 1977).

Assuming, without deciding, that the price paid by Patterson was grossly inadequate, there is no proof that the other circumstances mentioned by the master contributed to the inadequacy of the price. The master states that the erroneous notice (certified letter) sent by the Tax Collector to Goldsmith on May 31, 1983 advising him that he had thirty days to redeem "no doubt misled Defendants [Goldsmith and the Jacksons] in delaying payment until after the June 7th redemption period had run." Goldsmith admitted that he did not pick up the certified letter from the post office until June 8, 1983, the day after the redemption period had expired. He therefore could not have relied upon the notice to his detriment. The master next states that the "Tax Collector admits" that the County's act of taking exclusive possession consisted only of "tacking [on the property] the notice of sale." Having concluded that the posting of the Notice of Seizure, Levy and Sale was suffi-

cient compliance with the statute, this basis for invalidation of the deed has no merit. Finally, the master states that Patterson's failure to notify Goldsmith that the redemption period was about to expire had every indication it was deliberate and "raises a presumption of fraud." We disagree with this reasoning. The law places no obligation upon a purchaser at a tax sale to notify the owner that the period for redemption of his property is about to expire. It was therefore not inequitable for Patterson to have refrained from doing an act the law does not require him to do.

Accordingly, the order of the master is

Reversed.

SHAW and GOOLSBY, JJ., concur.