2160

SOUTH CAROLINA FEDERAL SAVINGS BANK (Now Known as First Union National Bank of South Carolina), Appellant v. ATLANTIC LAND TITLE COMPANY, INC., The Treasurer of Beaufort County, The Beaufort County Tax Auditor and Beaufort County Tax Assessor, Respondents.

(442 S.E. (2d) 630)

Court of Appeals

*Marvin H. Dukes, III,* of *Dukes, Williams, Infinger & Meeks,* Beaufort, *for appellant.*

*J. Ray Westmoreland*, Hilton Head Island and *Stephen P. Hughes*, Beaufort, *for respondents.*

Heard Feb. 10, 1994

Decided Mar. 21, 1994.

CURETON, Judge:

South Carolina Federal Savings Bank (South Carolina Federal) brought this action to have a tax deed held by Atlantic Land Title Company, Inc. (Atlantic) declared void on the grounds that Beaufort tax authorities failed to partition the property before sale and failed to provide proper notice to the bank as mortgage holder. The master declared Atlantic had title in fee simple. The bank appeals. We affirm.

This case is one in equity in which this Court may take its own view of the preponderance of the evidence. *See Godfrey v. Webb*, 277 S.C. 246, 285 S.E. (2d) 883 (1982) (suit to set aside a tax deed is in equity); *Townes Assocs., Ltd. v. City of Greenville*, 266 S.C. 81, 221 S.E. (2d) 773 (1976) (in equity case appellate court may take its own view of the preponderance of the evidence).

The property in question consists of .43 acres of commercial property on Highway Twenty-One, adjacent to the marshes of Albergotti Creek. The property at one time was part of a larger tract, which was divided into lots in November, 1956. The property is comprised of lot forty-nine and part of lot forty-eight. The property has been taxed as one tract.

In January, 1987 the bank received a mortgage on the subject property to secure a $28,000 loan it made. In May, 1989, the bank brought an action to foreclose the mortgage.[1] At that time, the 1988 real estate taxes were also delinquent, and the property was sold to Atlantic at public auction October 2, 1989 for $1,750 to satisfy a tax debt of $1,539.60. During the statutory one-year redemption period, notice was sent to the bank, as mortgage holder, of its right to redeem the property. The bank failed to redeem the property, however, and a deed was issued to Atlantic.

The bank then sought to set aside the tax deed on the bases

---

[1] On January 2, 1990 the bank was the successful bidder at a sale to foreclose on the bank's mortgage, although a deed was not issued pursuant to this sale until April 10, 1991.

the treasurer (1) failed to partition the property prior to sale; and (2) failed to provide the bank proper statutory notice.

The bank maintains the property should have been divided, with only the portion of the property in lot forty-eight being sold to satisfy the tax debt. The bank offered expert valuation testimony to establish that the lot forty-eight portion of the property was worth $13,750. Other evidence, however, suggested that portion of the property alone was virtually worthless.

The bank acknowledged receipt of the redemption notice sent by certified mail, return receipt requested, but cited the statutory requirement at that time that such notice be forwarded by registered mail, not certified mail.[2]

The master found no excessive levy. He found the portion of lot forty-eight alone was almost valueless, save for its marsh view, and disbelieved the expert appraisal. The master noted that the entire property brought only $1,750, and determined the treasurer had no duty to partition the two lots and sell only the portion of lot forty-eight.

The master also found that although notice was sent by certified mail, return receipt requested, rather than by registered mail, the bank signed the return receipt card acknowledging actual receipt of the notice. Therefore, the master determined the bank received sufficient notice.

## I.

On appeal, the bank argues that notice by certified mail did not comply with the statutory requirement of notice by registered mail. The bank concedes it received notice, but maintains strict construction of the taxing statute renders the notice defective. We disagree. ·

Statutory requirements protecting against tax sale forfeiture of real property are strictly construed, and statutory notice requirements may not be circumvented simply by establishing actual notice of a tax sale. *See Aldridge v. Rutledge*, 269 S.C. 475, 238 S.E. (2d) 165 (1977)

---

[2] S.C. Code Ann. § 12-49-300 (1976) provided for notice of tax sale to be served on mortgagees "in person or forwarded to his last known post office address by registered mail. . . ." A 1992 amendment to this section, effective July 1, 1992, substituted "certified mail, return receipt requested—deliver to addressee only" for "registered mail." S.C. Code Ann. § 12-49-300 (Supp. 1993).

(failure to provide notice to true owner is not excused, regardless of actual notice); *Donohue v. Ward,* 298 S.C. 75, 378 S.E. (2d) 261 (Ct. App. 1989) (failure to give twenty-day notice fatal to sale and delivery of tax deed despite a lack of prejudice to true owner).

Nonetheless, we distinguish the present case from *Aldridge* and *Donohue.* In those cases, the parties received notice that was inferior to the statutory notice requirements. Here, the bank received notice by certified mail,[3] return receipt requested, which provides safeguards greater than those of notice by registered mail.[4] Although registered mail provides additional safeguards as to the post office's handling of the mail, certified mail, return receipt requested, provides greater safeguards as to actual receipt by the mortgagee. With registered mail, delivery is ensured to a certain address. With certified mail, return receipt requested, not only is delivery to a certain address ensured but also receipt for the mail is ensured.

■ We hold that where, as here, notice of a tax sale exceeds the statutory notice requirements, the tax deed may not be set aside on the basis of insufficient notice.

## II.

■ The bank also argues the master erred in finding the taxing authority had no duty to partition the property before sale, and in finding the treasurer did not exact an excessive levy. We disagree.

Section 12-51-40 permits the levy only of "so much of the defaulting taxpayer's estate . . . as may be sufficient to satisfy the taxes, assessments, penalties, and costs" in the execution. S.C. Code Ann. § 12-51-40 (Supp. 1993).

■ The question of excessiveness, however, is one of fact. *Southern Region Indus. Realty, Inc. v. Timmerman,* 285 S.C. 142, 328 S.E. (2d) 128 (Ct. App. 1985). Although we recognize that in equity cases we may make our own findings of fact based on the preponderance of the evidence, we are not required to disregard the findings of the

---

[3] "Uninsured first-class mail whose delivery is recorded by having the addressee sign for it." *The American Heritage Dictionary* 255 (2d ed. 1985).

[4] "Mail that is recorded by the post office when sent and at each point on its route so as to assure safe delivery." *The American Heritage Dictionary* 1041 (2d ed. 1985).

master who saw and heard the witnesses and was in a better position to judge their credibility. *See Costa And Sons Construction Co., Inc. v. Long,* 306 S.C. 465, 412 S.E. (2d) 450 (Ct. App. 1991).

There are no fixed guidelines as to what constitutes an excessive levy. *Aldridge,* 269 S.C. 475, 238 S.E. (2d) 165. A tax sale does not necessarily exact an excessive levy because it brings considerably more than the tax debt, *Dickson v. Burckmyer,* 67 S.C. 526, 46 S.E. 343 (1903), or because it brings an inadequate price. *Patterson v. Goldsmith,* 292 S.C. 619, 358 S.E. (2d) 163 (Ct. App. 1987). In *Dickson,* the Supreme Court, citing the imprecise nature of the levying process, held a sale in which the land sold for ten times the tax debt was not necessarily excessive. Likewise, in *Patterson,* this Court refused to set aside the sale of a duplex rental apartment, worth as much as $50,000, which was sold for $600 to satisfy delinquent taxes of $270.67.

As reasoned by the court in *Wilson v. Cantrell,* 40 S.C. 114, 18 S.E. 517 (1893) it is not what the land is really worth, but what it would bring, that should guide the taxing authority in estimating how much property should be sold. *Wilson,* 40 S.C. 114, 18 S.E. 517. In *Wilson,* the Supreme Court concluded that although the statute relating to the collection of delinquent taxes authorizes the seizure and sale of only so much of the taxpaper's land as may be necessary to pay the taxes assessed, the fact that an entire tract was sold without any effort to divide it provided no basis for the invalidation of the sale, in the absence of fraud or collusion. *Id.* 18 S.E. at 524; *see also Patterson,* 292 S.C. at 628, 358 S.E. (2d) at 168. Like the instant case, the whole tract in *Wilson* brought only enough to pay the taxes and costs.

Upon a review of the entire record we remain unconvinced the master erred in finding the treasurer had no duty to partition and the levy was not excessive. *See Godfrey v. Heller,* — S.C. —, 429 S.E. (2d) 859 (Ct. App. 1993) (despite equity review, appellant still has burden of establishing referee erred in his findings of fact). The evidence suggests the portion of lot forty-eight would not have brought a sufficient price to satisfy the tax debt. While the sale price for the entire tract may have been low, the circumstances of the sale do not otherwise warrant a finding of excessive levy.

Accordingly, the appealed order is affirmed.[5]

Affirmed.

SHAW and CONNOR, JJ., concur.

---

[5] Having decided the above issues in favor of Atlantic and the Beaufort tax authorities, we need not address any additional sustaining grounds.