543 S.E.2d 556

H. Daniel FOLK, Jr., Respondent,

v.

W.O. THOMAS, Jr., as Treasurer of Charleston County, W.T. Martin, as Delinquent Tax Collector of Charleston County, Daniel M. Rundell and Rose M. Rundell,

of whom W.O. Thomas, Jr., as Treasurer of Charleston County and W.T. Martin, as Delinquent Tax Collector of Charleston County, are Respondents

and Daniel M. Rundell and Rose M. Rundell are the Petitioners.

No. 25256.

Supreme Court of South Carolina.

Heard Jan. 9, 2001.

Decided March 12, 2001.

Rehearing Denied April 3, 2001.

Beth Branham Davis and Brian N. Davis, both of Davis & Davis, of Charleston, for petitioners.

Joseph S. Mendelson, and LeRoy P. Hutchinson, both of Charleston, for respondent H. Daniel Folk, Jr.

Samuel W. Howell, IV, of Nexsen, Pruet, Jacobs, Pollard & Robinson, LLP, of Charleston, and Joseph Dawson, III and Bernard E. Ferrara, Jr., also of Charleston, all for respondents W.O. Thomas, Jr. and W.T. Martin.

Kelly J. Golden and Robert E. Lyon, of Columbia, for Amicus Curiae South Carolina Association of Counties.

Ronald L. Richter, Jr., of Charleston, for Amicus Curiae Ava B. Hawkins and Ava B. Hawkins Family Trust.

TOAL, Chief Justice:

We granted certiorari upon petition of Daniel M. Rundell and Rose M. Rundell ("Petitioner") to review the Court of Appeals' decision to set aside certain tax deeds. We reverse and reinstate the Master's Order upholding tax deeds.

## FACTUAL/PROCEDURAL BACKGROUND

H. Daniel Folk ("Folk") failed to pay taxes on two parcels of land, valued between $140,000 and $150,000 collectively, in 1992 and 1993.[1] Parcel A was an improved 1–acre parcel, containing a 1,700 square foot home, an aviary building, 2–car garage, shed, and leased office building. Parcel B was an unimproved 11.47–acre parcel, located next to Parcel A. Parcel B went up for sale first, only because its assigned tax map reference number was lower than Parcel A's. Petitioner purchased Parcel B for the exact amount Folk owed on the land, $1000. Parcel A went up for sale next, but did not receive a bid. The parcel was deeded to the Forfeited Land Commission. At a subsequent auction, Petitioner purchased Parcel A from the Forfeited Land Commission for $1746.98, exactly enough money to satisfy the taxes owed on it.

On January 10, 1996, Folk brought this action alleging the Delinquent Tax Collector failed to follow the statutory scheme for delinquent tax sales, to quiet title, and alleging the Petitioner held the property in constructive trust. W.O. Thomas, Jr., ("Thomas"), the Treasurer of Charleston County, and W.T. Martin ("Martin"), the Delinquent Tax Collector of Charleston County, answered claiming Charleston County followed the law concerning tax sales. Petitioner answered claiming the property was not divisible, and seeking to quiet title. On June 26, 1997, the parties entered into a Consent to Order of Reference to Master in Equity with Finality.

On September 29, 1997, a hearing was held before the Master in Equity for Charleston County. On October 23, 1997, the Master issued an order upholding the tax sale, confirming title in the Petitioner, and requiring Folk to vacate the property. Folk appealed to the Court of Appeals. The

---

1. There is no dispute Folk received all the proper notices required under South Carolina law.

Court of Appeals with one judge dissenting, reversed the order of the Master in Equity and set aside the tax deeds. *Folk v. Thomas,* 336 S.C. 466, 520 S.E.2d 327 (Ct.App.1999). We granted certiorari to review the decision of the Court of Appeals. The issues before this Court are:

I. Did the Court of Appeals err in holding the two tax deeds should be set aside because the Charleston County failed to ascertain whether Parcel B was divisible before the sale?

II. Did the Court of Appeals err in making a determination that the property was divisible and failing to remand the case for a determination of divisibility by the Master in Equity?

## LAW/ANALYSIS

### I.

 An action to set aside a tax deed is in equity. *Godfrey v. Webb,* 277 S.C. 246, 285 S.E.2d 883 (1982). Therefore, this Court may take its own view of the preponderance of the evidence. *Townes Assocs., Ltd. v. City of Greenville,* 266 S.C. 81, 221 S.E.2d 773 (1976).

 Petitioner argues Charleston County was not required by S.C.Code Ann. § 12–51–40(d) (Supp.1999) to partition Folk's property prior to the tax sale, and therefore the Court of Appeals erred in setting the tax deeds aside. We agree.

Section 12–51–40(d) contains the procedure for conducting a tax sale and provides as follows:

The property must be advertised for sale at public auction. The advertisement must be in a newspaper of general circulation within the county or municipality, if applicable, and must be entitled "Delinquent Tax Sale". It shall include the delinquent taxpayer's name and the description of the property, a reference to the county auditor's map-block-parcel number being sufficient for a description of realty. The advertising must be published once a week prior to the legal sales date for three consecutive weeks for the sale of real property, and two consecutive weeks for the sale of personal property. All expenses of the levy, seizure, and sale must be added and collected as additional costs, and shall include, but not be limited to, the expense of taking possession of real or personal property, advertising, storage,

identifying boundaries of the property, and mailing certified notices. **When the real property is divisible, the tax assessor, county treasurer, and county auditor shall ascertain that portion of property that is sufficient to realize a sum upon sale sufficient to satisfy the payment of the taxes, assessments, penalties, and costs. In such cases, the officer shall partition the property and furnish a legal description of it.** (emphasis added).[2]

The dispute in this case is over the last two sentences of section 12–51–40(d). Specifically, when is the property divisible, and who bears the burden of raising the issue of divisibility?

A cardinal rule of statutory construction is that legislative intent prevails. *Joint Legislative Comm. v. Huff, et al.,* 320 S.C. 241, 464 S.E.2d 324 (1995); *See also Glover by Cauthen v. Suitt Constr. Co.,* 318 S.C. 465, 458 S.E.2d 535 (1995). "A statutory provision should be given a reasonable and practical construction consistent with the purpose and policy expressed in the statute." *Hay v. South Carolina Tax Com.,* 273 S.C. 269, 273, 255 S.E.2d 837, 840 (1979). Based on a review of the statutory scheme, we believe the intent of the legislature was to fairly collect all taxes due the state.

In this case, Folk concedes that he never raised the issue of divisibility or requested a partition prior to the tax sale. Folk argues the County has a duty prior to the tax sale to determine whether each piece of tax sale property is divisible, and if divisible, exactly how much of the property needs to be sold to satisfy the taxes owed on the property. Petitioner argues under the rules of statutory construction and current South Carolina case law, failure to make a pre-sale determination of divisibility does not invalidate a tax sale. *See Wilson v. Cantrell,* 40 S.C. 114, 18 S.E. 517 (1893); *South Carolina Fed. Sav. Bank v. Atlantic Land Title Co., Inc.,* 314 S.C. 292, 442

---

**2.** Section 12–51–40(d) was recently amended to read, in part: "When the real property is divisible, the tax assessor, county treasurer, and county auditor **may** ascertain what portion of the property that is sufficient to realize a sum upon sale sufficient to satisfy the payment of the taxes, assessments, penalties, and costs. In those cases, the officer **may** partition the property and furnish a legal description of it." S.C.Code Ann. § 12–51–40(d) (Supp.2000) (emphasis added). However, at the time Folk's property was sold, the statute read as quoted above.

S.E.2d 630 (Ct.App.1994) (finding *Wilson* controlling and that "the fact that the entire tract was sold without any effort to divide it provided no basis for invalidation of the sale, in the absence of fraud or collusion").

We find the language of the section 12–51–40(d) does not place a pre-sale burden on the County or tax collector to determine divisibility.[3] We hold the property owner, or the party seeking divisibility, has the initial burden of requesting the county or its tax collector to determine divisibility prior to the sale.[4] As discussed below, interpreting the statute any differently would result in folly from a policy standpoint. Absent any direct language by the legislature, we decline to place such an onerous burden on the county to perform a divisibility study on each of the numerous pieces of property sold at tax sales each year.

Policy considerations weigh heavily in favor of finding section 12–51–40(d) does not require the county to self-start a divisibility study. As the amici argue, the divisibility of property must be determined according to many statutes and regulations. For example, such regulations as county zoning restrictions, city, town or municipality restrictions, special land use restrictions, conservation easements, development restrictions such as covenants and bylaws, ingress and egress restrictions, availability of public utilities, minimum roadway frontage requirements, and coastal and wetlands restrictions all must be taken into account before a parcel can be divided. Requiring the county to start, on its own initiative, a pre-sale determination of divisibility for every property in a delinquent tax sale would greatly increase the burden on the county,[5] as well as increasing the redemption cost to the delinquent taxpayer. Furthermore, since 87 % of the properties sold at delinquent tax sales are redeemed by the taxpayer, the in-

---

**3.** Folk argues we should consider subsection (b) of section 12–51–40 as evidence the county has a pre-sale burden. However, subsection (b) deals only with general procedure and places no specific responsibility on the tax collector.

**4.** In the instant case, Folk did not make a request that his property be divided pre-sale, nor did he present any evidence at his hearing before the Master in Equity that his property was legally capable of division.

**5.** In his dissent in *Folk*, Judge Stilwell also expressed concern that "requiring a determination, in advance, of the divisibility of every piece

creased cost is likely to: (1) have a chilling effect on bidders at tax sales; (2) decrease the likelihood all taxes are collected; and (3) amount to a waste of money and time since the taxpayer will likely redeem the property.

Therefore, we hold the defaulting taxpayer bears the initial burden of requesting a determination of divisibility before a county is required to undertake a divisibility study. As illustrated by the instant case, placing the initial burden on the taxpayer, rather than the county, is not unreasonable. It was Folk, the defaulting taxpayer, who slept on his rights, did not pay his taxes for two years, failed to respond to any of the certified notices sent by the tax collector, and failed to show up at the tax sale.

## II.

In light of our holding above, there is no need to address the merits of Petitioner's second issue on certiorari.

## CONCLUSION

Based on the foregoing, we **REVERSE** the Court of Appeals, and reinstate the tax deeds.

MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.

---

of property sold for taxes at public auction ... plac[es] an unreasonable burden upon various tax collectors in our state." *Folk,* 336 S.C. at 472, 520 S.E.2d at 330.