**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Sandy Hill Partners, LLC, Appellant,

v.

Central Palmetto Asset Management, LLC and the County of Florence, Respondents.

Appellate Case No. 2019-001527

———

Appeal From Florence County
Michael G. Nettles, Circuit Court Judge

———

Unpublished Opinion No. 2023-UP-234
Heard September 12, 2022 – Filed June 14, 2023

———

**AFFIRMED**

———

Walker H. Willcox, of Willcox Buyck & Williams, PA, of Florence, for Appellant.

D. Malloy McEachin, Jr., of McEachin & McEachin, P.A., of Florence, for Respondent County of Florence.

Theodore von Keller, of Crawford & von Keller, LLC, and Sara Christine Hutchins, of the State Fiscal Accountability Authority, both of Columbia, for Respondent Central Palmetto Asset Management, LLC.

———

**PER CURIAM:**  In this action to invalidate a tax sale, Sandy Hill Partners, LLC (Sandy Hill) challenges the circuit court's grant of summary judgment to Central Palmetto Asset Management, LLC (Central Palmetto) and Florence County (the County), arguing that there are still genuine issues of material fact regarding (1) the validity of the tax sale; and (2) a related dispute over rent. We affirm.

## FACTS/PROCEDURAL HISTORY

At issue in this case are four mobile homes, including a 1995 Sunshine 16X76; a 1997 Bellcrest 16X76; a 2000 Fleetwood 28X76; and a 1996 Oakwood 24X44.

After Mark M. Richardson failed to pay taxes for the year 2015,[1] the County moved to levy four mobile homes owned by RMR Rental and Investment LLC 3 (RMR)—a company Richardson owned as a sole proprietor.  Those notices were dated March 28.

Advertisements appeared in a local news source apparently attributing the mobile homes at issue in this case—as well as some other homes—to Richardson; other property was attributed to RMR.  Records submitted at the hearing indicate that notices were posted to all four of the relevant homes on July 13, 2016.

On October 3, 2016, Central Palmetto purchased the properties at a tax sale. One day later, RMR purported to sell its mobile home park and all mobile homes owned by the company[2] to Sandy Hill.[3]

According to an affidavit from Andrew Nissen, Sandy Hill's principal, "a search was done on any outstanding, delinquent or unpaid taxes owed on mobile homes at the park" before Sandy Hill purchased the property.  Any taxes found in that search were paid by RMR.  Nissen additionally testified that he "never observed any notices posted at the park," and that the County "was on notice that [Nissen] purchased the park in October 2016."

---

[1] County records also indicate Richardson did not pay taxes in 2016.

[2] The mobile home park included both those homes owned by the park's owner and those homes owned by the residents.

[3] Andrew Nissen, Sandy Hill's principal, testified in an affidavit that the sale took place on October 3, but the deed dates the sale on October 4.

Notices of the tax sale and the right to redeem initially continued to be sent to Richardson.[4]  Eventually, the County also began sending notices of the right to redeem to Sandy Hill.  It is undisputed that neither RMR nor Sandy Hill redeemed the property.

When Central Palmetto moved to assert control over the four mobile homes at issue in this action, Sandy Hill sued to invalidate the tax sale.  In its complaint, Sandy Hill argued that the tax sale was defective under state law and that if the tax sale were found to be valid, Central Palmetto owed Sandy Hill lot rent for the time that the mobile homes were located at the park after Central Palmetto's purchase.

Central Palmetto answered and added a counterclaim to assert possession. The company also moved for summary judgment.  Following a hearing, the circuit court held its ruling in abeyance to give Sandy Hill additional time for discovery. On August 26, 2019, the circuit court heard the motion again.

On September 4, 2019, the circuit court granted summary judgment, finding the tax sale followed state law and that Central Palmetto was "the record owner" of the four homes.  The circuit court denied Sandy Hill's motion to reconsider in a Form 4 order two days later.  This appeal followed.

## ISSUES ON APPEAL

I. Did the circuit court err in finding that there were no genuine issues of material fact regarding Sandy Hill's challenge to the validity of the tax sale?

II. Did the circuit court err in finding that there were no genuine issues of material fact regarding Sandy Hill's claim in the alternative for rent?

## STANDARD OF REVIEW

"When reviewing a grant of summary judgment, appellate courts apply the same standard applied by the [circuit] court pursuant to Rule 56(c), SCRCP." *Turner v. Milliman*, 392 S.C. 116, 121–22, 708 S.E.2d 766, 769 (2011).  "Summary judgment is appropriate when the pleadings, depositions, affidavits, and discovery

---

[4] There were also undated letters from the county to RMR.  In correspondence, the County often used "Richardson" and "RMR" interchangeably.

on file show there is no genuine issue of material fact such that the moving party must prevail as a matter of law." *Id*. at 122, 708 S.E.2d at 769.

"In determining whether any triable issues of fact exist, the evidence and all inferences which can be reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party." *Silvester v. Spring Valley Country Club*, 344 S.C. 280, 285, 543 S.E.2d 563, 566 (Ct. App. 2001). "A court considering summary judgment neither makes factual determinations nor considers the merits of competing testimony; however, summary judgment is completely appropriate when a properly supported motion sets forth facts that remain undisputed or are contested in a deficient manner." *M & M Grp., Inc. v. Holmes*, 379 S.C. 468, 473, 666 S.E.2d 262, 264 (Ct. App. 2008) (quoting *David v. McLeod Reg'l Med. Ctr.*, 367 S.C. 242, 250, 626 S.E.2d 1, 5 (2006)).

> The party seeking summary judgment has the burden of clearly establishing the absence of a genuine issue of material fact. Once the party moving for summary judgment meets the initial burden of showing an absence of evidentiary support for the opponent's case, the opponent cannot simply rest on mere allegations or denials contained in the pleadings. The nonmoving party must come forward with specific facts showing there is a genuine issue for trial.

*Singleton v. Sherer*, 377 S.C. 185, 197–98, 659 S.E.2d 196, 202–03 (Ct. App. 2008) (citations omitted). However, the non-moving party's burden is frequently not high. "In order to withstand a motion for summary judgment in cases applying the preponderance of the evidence burden of proof, the non-moving party is only required to submit a mere scintilla of evidence." *Turner*, 392 S.C. at 122, 708 S.E.2d at 769.

**LAW/ANALYSIS**

### I.     Validity of Tax Sale

Sandy Hill argues that the circuit court erred in granting summary judgment to the County and Central Palmetto, contending that there are contested issues of fact regarding whether the County strictly complied with the tax sale statute. We disagree.

Our state's tax sale statute imposes a number of requirements on tax collecting authorities before a property can be sold to satisfy unpaid taxes. *See* S.C. Code Ann. § 12-51-40 (2014 & Supp. 2022). The taxing authority must

> (a) On April first or as soon after that as practicable, mail a notice of delinquent property taxes, penalties, assessments, and costs to the defaulting taxpayer and to a grantee of record of the property, whose value generated all or part of the tax. The notice must be mailed to the best address available, which is either the address shown on the deed conveying the property to him, the property address, or other corrected or forwarding address of which the officer authorized to collect delinquent taxes, penalties, and costs has actual knowledge. The notice must specify that if the taxes, penalties, assessments, and costs are not paid, the property must be advertised and sold to satisfy the delinquency[;]
>
> (b) If the taxes remain unpaid after thirty days from the date of mailing of the delinquent notice, or as soon thereafter as practicable, take exclusive possession of the property necessary to satisfy the payment of the taxes, assessments, penalties, and costs[;] . . .
>
> (c) If the "certified mail" notice has been returned, take exclusive physical possession of the property against which the taxes, assessments, penalties, and costs were assessed by posting a notice at one or more conspicuous places on the premises[; and] . . .
>
> (d) The property must be advertised for sale at public auction.

*Id*.

"Tax sales must be conducted in strict compliance with statutory requirements. Even actual notice is insufficient to uphold a tax sale absent strict compliance with statutory requirements." *In re Ryan Inv. Co., Inc.*, 335 S.C. 392, 395, 517 S.E.2d 692, 693 (1999) (citation omitted).

For example, in *Ryan Investment. Co.*, the county was unable to send a redemption notice to the taxpayer with restricted delivery because, according to the buyer in that case, "postal regulations [did] not allow restricted delivery when the addressee is a corporation." *Id.* at 394, 517 S.E.2d at 693. Regardless, our supreme court ruled that "postal regulations in and of themselves cannot excuse the failure to comply with statutory mailing requirements," and that "[t]he party seeking to excuse non-compliance must demonstrate facts indicating attempted compliance before the [c]ourt will consider the adequacy of the mailing actually accomplished." *Id.* at 395, 517 S.E.2d at 693.

Much of Sandy Hill's argument revolves around the fact that the County sent the tax notices to Richardson, rather than to RMR, and that the mobile homes were advertised as Richardson's property. For example, Sandy Hill emphasizes *Rives v. Bulsa*, noting that in that case "[t]he failure to sell the property in the name of the true owner required the invalidation of the tax sale." *See generally* 325 S.C. 287, 478 S.E.2d 878 (Ct. App. 1996); *see also id.* at 293, 478 S.E.2d at 881 ("A tax execution is not issued against the property, it is issued against the defaulting [taxpayer].").

We find that *Rives* is distinguishable. In that case, the tax notices were sent to the father of two individuals who inherited the property. *See id.* at 289–90, 478 S.E.2d at 879. The court in that case noted that "[t]he post office box was used by [the father], but never his children." *Id.* at 290, 478 S.E.2d at 879. The court also rejected an argument that the tax sale could be valid because the father had "an agency relationship" with his children. *Id.* at 291–92, 478 S.E.2d at 880.

However, in the current case, Richardson shared an address with the LLC and was identified as its sole member. As a result, the concerns that animated the *Rives* decision are not present here. *See id.* at 293, 478 S.E.2d at 881 ("Due process of law requires some sort of notice to a landowner before he is deprived of his property.").

Additionally, while it is true that our courts have not always looked favorably upon efforts to apply agency law in tax sale cases, there is at least one case where our supreme court used such principles in upholding a tax sale. *See generally Johnson v. Arbabi*, 355 S.C. 64, 584 S.E.2d 113 (2003).

In *Arbabi*, a redemption notice was sent jointly to a husband and wife who had separated. *See id.* at 67, 584 S.E.2d at 114. The husband contested the efforts of the holder of the tax deed to quiet title. *See id.* at 67, 584 S.E.2d at 115. The supreme court reversed this court's determination that "an implied agency cannot

satisfy the receipt of a redemption notice." *Id.* at 71, 584 S.E.2d at 116–17. The court noted:

> While it is unfortunate that Mrs. Arbabi's failure to act on the redemption notice and failure to disclose it to Dr. Arbabi in a timely fashion resulted in their loss of the property, equity nonetheless favors petitioner in this action since any "fault" is on the part of the Arbabis.
>
> Accordingly, we reverse the Court of Appeals' holding that implied agency cannot satisfy the requirements for the receipt of a redemption notice[] and instead find that by his conduct, Dr. Arbabi made Mrs. Arbabi his implied agent.

*Id.* at 72, 584 S.E.2d at 117(citation omitted); *but see Manji v. Blackwell*, 323 S.C. 91, 93–94, 473 S.E.2d 837, 837–38 (Ct. App. 1996) (affirming judgment against holder of tax deed when holder "conceded the redemption notice was not sent 'delivery to addressee only,'" and taxpayer's "wife signed the receipt" (footnote omitted)).

Because of the unique factors in this case—Richardson and his LLC sharing an address and Richardson's status as the sole member of the investment company—we decline to elevate the corporate form over the taxpaying function. Notifying Richardson rather than notifying his LLC is an immaterial distinction under the unique facts of this case and the record the parties provided to the circuit court at summary judgment.

Further, county records reflect that Richardson was believed by the County to be the owner of the property. We will not impose on counties a duty to search the DMV records every time a mobile home is subject to a tax sale; we believe neither the statute nor our precedent supports such a requirement. *See* S.C. Code Ann. § 12-51-40(a) ("The notice must be mailed to the best address available, which is either the address shown on the deed conveying the property to him, the property address, or other corrected or forwarding address of which the officer authorized to collect delinquent taxes, penalties, and costs has actual knowledge."); *cf. Folk v. Thomas*, 344 S.C. 77, 82, 543 S.E.2d 556, 558 (2001) ("We find the language of [] section 12–51–40(d) does not place a pre-sale burden on the County or tax collector to determine divisibility [of the property]. We hold the property owner, or the party

seeking divisibility, has the initial burden of requesting the county or its tax collector to determine divisibility prior to the sale." (footnotes omitted)).

Sandy Hill raises other arguments, none of which we find persuasive. They argue that the notices of levy were not placed on the mobile homes, or at least not the proper mobile homes. The record contains a signed notice of levy for each mobile home. Sandy Hill attempts to create an issue of fact by pointing to (1) discrepancies between the lot numbers on the notices and those on an undated roster of lot numbers and mobile homes, and (2) an assertion by Sandy Hill's principal in an affidavit that "I never observed any notices posted at the park." Neither of those assertions create a material issue of fact.[5]

Sandy Hill also raises alleged deficiencies in the tax sale advertisements. For example, it cites *Hawkins v. Bruno Yacht Sales*, 353 S.C. 31, 41, 577 S.E.2d 202, 207 (2003), for the proposition that a description is inadequate if it does not provide a potential buyer the ability to look up information on the property. Sandy Hill fails to note that in *Hawkins*, our supreme court reversed this court for finding inadequate a description comparable to the one used in the present matter. *See id.* at 41, 577 S.E.2d at 207–08. Sandy Hill also notes that Richardson was incorrectly listed as the owner. These are not, as Sandy Hill contends, enough to create an issue of fact; both of these things are readily discernible in the record. The circuit court simply held that they were insufficient to invalidate the sale. We agree because the county seemingly was acting on its understanding of the ownership of the mobile homes.[6] As to Sandy Hill's argument that the use of parcel numbers in the advertisement does

---

[5] Our court has ruled before that a taxpayer had produced "a preponderance of the evidence" when the taxpayer and a resident claimed not to have seen the notices. *Forfeited Land Comm'n of Bamberg Cnty. v. Beard*, 424 S.C. 137, 145–46, 817 S.E.2d 801, 805 (Ct. App. 2018). However, in that case, a county official "acknowledged the place in the folder where a witness to the posting would sign had not been completed." *Id.* at 146, 817 S.E.2d at 805. As a result, this case is distinguishable.

[6] Additionally, Sandy Hill argues that the notices of delinquent tax were sent before April 1, in violation of S.C. Code Ann. § 12-51-40(a) (2014) (requiring that the relevant official "[o]n April first or as soon after that as practicable, mail a notice of delinquent property taxes, penalties, assessments, and costs to the defaulting taxpayer and to a grantee of record of the property, whose value generated all or part of the tax"). As Respondents note, this is without merit. The notices are dated April 12. Sandy Hill is referring to the wrong documents.

not correctly identify the mobile homes at issue, we find no evidence of this in the record.

## II. Request for Rent

As an initial matter, we find that section 12-51-40 cannot be read to require the County to collect or pay rent on the mobile home lots for the period through the tax sale, nor does Sandy Hill point to any such requirement in the statute. In fact, our reading of the statute leads to the opposite conclusion.

> In the case of personal property, the person officially charged with the collection of delinquent taxes *is not required to move the personal property from where situated at the time of seizure* and further, the personal property may not be moved after seized by anyone under penalty of conversion unless delinquent taxes, assessments, penalties, and costs have been paid.

S.C. Code Ann. § 12-51-40(c) (2014 & Supp. 2022) (emphasis added). This sentence is immediately followed by the designation of mobile homes as personal property. *Id.* If the legislature had intended for rent to be due on lots when mobile homes were seized, it would have said so. Without a requirement to pay rent, Sandy Hill's argument that the County was responsible to collect rent and include it in the "expenses of the levy, seizure, and sale" of the property has no merit. *See* § 12-51-40(d) (2014) (stating that all "expenses of the levy, seizure, and sale must be added and collected as additional costs" when sold at public auction).[7]

Further, we disagree with Sandy Hill's argument that it should recover rent under the theory of unjust enrichment.

> The elements of a quantum meruit claim are as follows: (1) a benefit conferred upon the defendant by the plaintiff; (2) realization of that benefit by the defendant; and (3) retention by the defendant of the benefit under conditions that make it unjust for him to retain it without paying its value.

---

[7] We recognize that subsection (d) specifically references the costs of storage, but we do not believe that storage costs should be equated with rent.

*Boykin Contracting, Inc. v. Kirby*, 405 S.C. 631, 637, 748 S.E.2d 795, 798 (Ct. App. 2013). We question whether Sandy Hill qualifies under any of the three elements, but we will focus solely on the third. Given that the mobile homes were initially kept on the property pursuant to the tax-sale statute, we find that no rent accrued during this period.

Moreover, given that Sandy Hill essentially admits in its brief before this court that it did not demand rent at any point, the conditions did not make it unjust for Central Palmetto to fail to pay rent. The notion that Sandy Hill "did not know that the County sold [the mobile homes] to Central Palmetto in 2016 and 2017" during the relevant period when Central Palmetto might have been required to pay rent— after the right-to-redemption period had passed—beggars belief and does not warrant the court declining to either dismiss the complaint or, in the alternative, grant summary judgment. *See USAA Prop. & Cas. Ins. Co. v. Clegg*, 377 S.C. 643, 653–54, 661 S.E.2d 791, 796 (2008) ("[W]hen plain, palpable, and indisputable facts exist on which reasonable minds cannot differ, summary judgment should be granted." (quoting *Ellis v. Davidson*, 358 S.C. 509, 518, 595 S.E.2d 817, 822 (Ct. App. 2004))).

## CONCLUSION

For the foregoing reasons, we affirm.

**AFFIRMED.**

**GEATHERS and MCDONALD, JJ., and HILL, A.J., concur.**