**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Cutter & Company, LLC, Appellant,

v.

Stafford Funding Group LLC, O & P Properties, LLC, Kathy Henderson, as Delinquent Tax Collector of Orangeburg County, Defendants,

Of which Stafford Funding Group, LLC and Kathy Henderson, as Delinquent Tax Collector of Orangeburg County, are Respondents and O & P Properties, LLC is an Appellant.

Appellate Case No. 2021-000120

———

Appeal From Orangeburg County
James B. Jackson, Jr., Master-in-Equity

———

Unpublished Opinion No. 2024-UP-016
Heard November 7, 2023 – Filed January 10, 2024

———

**AFFIRMED**

———

Steven R. Anderson, of Law Office of Steven R. Anderson, of Columbia, for Appellant O & P Properties, LLC.

Leonard R. Jordan, Jr., of Jordan Law Firm, of Columbia, for Appellant Cutter & Company, LLC.

Michael C. Tanner, of Michael C. Tanner, LLC, of Bamberg, for Respondent Stafford Funding Group, LLC.

Jerrod Austin Anderson, of Anderson Law Office, P.A., of Orangeburg, and Andrew F. Lindemann, of Lindemann Law Firm, P.A., of Columbia, both for Respondent Kathy Henderson.

---

**PER CURIAM:** Cutter & Company, LLC (Cutter) brought this action to void the tax sale of two properties in Orangeburg County. Both parcels were sold in a delinquent tax sale conducted by the county's delinquent tax collector, Kathy Henderson (Henderson). Stafford Funding Group, LLC (Stafford) purchased both "Parcel 1" and "Parcel 2." The matter was referred to the master-in-equity.

The master voided the tax sale of Parcel 1 but upheld the tax sale of Parcel 2. Cutter contends the master erred in refusing to set aside both sales. O & P Properties, LLC (O & P) held a mortgage on Parcel 2 and joins Cutter's arguments. We refer to them collectively as Appellants.

"The sale of a defaulting taxpayer's real property is strictly governed by statute." *Smith v. Barr*, 375 S.C. 157, 161, 650 S.E.2d 486, 488 (Ct. App. 2007). "An action to set aside a tax deed is [one] in equity." *Folk v. Thomas*, 344 S.C. 77, 80, 543 S.E.2d 556, 557 (2001). "[I]n equity cases[,] we may make our own findings of fact based on the preponderance of the evidence[; however,] we are not required to disregard the findings of the master who saw and heard the witnesses and was in a better position to judge their credibility." *S.C. Fed. Sav. Bank v. Atl. Land Title Co.*, 314 S.C. 292, 296–97, 442 S.E.2d 630, 632–33 (Ct. App. 1994).

First, Appellants argue that Henderson was statutorily required to send O & P's end of redemption notice by restricted delivery mail and she failed to do so. We disagree. The applicable statute—section 12-51-120 of the South Carolina Code (2014)—defers to section 12-41-40(b) for mailing requirements. § 12-51-120 (requiring "notice by 'certified mail, return receipt requested-restricted delivery' as provided in [s]ection 12-51-40(b) . . . "). Section 12-51-40(b) only requires "certified mail, return receipt requested" for notices mailed to entities. S.C. Code Ann. § 12-51-40(b) (2014) ("If the addressee is an entity instead of an individual, the

notice must be mailed . . . by certified mail, return receipt requested, as described in [the United States Postal Service Domestic Mail Manual] Section S912."). Appellants cite *Manji v. Blackwell*, 323 S.C. 91, 473 S.E.2d 837 (Ct. App. 1996) as supporting their argument that failing to mail O & P's notice by restricted delivery invalidates the tax sale of Parcel 2. We see *Manji* as meaningfully distinguishable because the redemption notice there was required for an individual as opposed to an entity. *See* 323 S.C. at 94, 473 S.E.2d at 838. *Manji* also predates the amendments made to sections 12-51-120 and -40(b) that supply the mailing requirements described above. *See* Act No. 399, 2000 S.C. Acts 3432.

Second, Appellants argue the tax sale is void because Henderson was statutorily required to divide Parcel 2 before selling the property in its entirety. In fact, Appellants argue Parcel 2 was already divided because even though the property was assessed as one parcel, two sides of the property were separated by a road and a plat designated four lots on the property.

We respectfully disagree. We do not think these facts obviate the pre-sale burden set forth in *Folk*. *See Folk*, 344 S.C. at 82, 543 S.E.2d at 558 (holding "section 12-51-40(d) does not place a pre-sale burden on the [c]ounty or tax collector to determine divisibility[;] . . . the property owner, or the party seeking divisibility, has the initial burden of requesting the county or its tax collector to determine divisibility prior to the sale"). We believe this is particularly the case when, as here, the property at issue has only one tax account number and was assessed as one parcel for tax purposes. Unless asked, Henderson was under no statutory obligation to divide the parcel for purposes of the tax sale. Instead, the legislature's use of the permissive term "may" in section 12-51-40(d) of the South Carolina Code (2014) provides the county with the *option* to divide delinquent property, not a statutory requirement to do so. *See Kennedy v. S.C. Ret. Sys.*, 345 S.C. 339, 353–53, 549 S.E.2d 243, 250 (2001) ("The use of the word 'may' signifies permission and generally means that the action spoken of is optional or discretionary unless it appears to require that it be given any other meaning in the present statute.").

Third, Appellants argue it was excessive for Henderson to sell the entirety of Parcel 2. We have explained that Henderson did not have a duty to divide Parcel 2 before the tax sale. "The question of excessiveness is a question of fact." *S. Region Indus. Realty, Inc. v. Timmerman*, 285 S.C. 142, 328 S.E.2d 128 (Ct. App. 1985). "There are no fixed guidelines as to what constitutes an excessive levy." *S.C. Fed. Sav. Bank*, 314 S.C. at 297, 442 S.E.2d at 633 (citation omitted). This is true even when the tax debt was significantly lower than the purchase price. *S.C. Fed. Sav. Bank*, 314 S.C. at 297, 442 S.E.2d at 633 (citing *Dickson v.*

*Burckmyer*, 67 S.C. 526, 46 S.E. 343 (1903)); *see also Patterson v. Goldsmith*, 292 S.C. 619, 358 S.E.2d 163 (Ct. App. 1987) ("A tax sale does not necessarily exact an excessive levy because it brings considerably more than the tax debt or because it brings an inadequate price.").

Appellants rely on *Timmerman* for their argument. That case is readily distinguishable. There, the court's review was under section 12-49-460 of the South Carolina Code, a statute requiring the authorities to "sell only 'so much of the defaulting taxpayer's estate'" as was necessary to satisfy the debt. *Timmerman*, 285 S.C. at 145–48, 328 S.E.2d at 130–31. That statute no longer exists, and in any event, *Timmerman* pre-dates the statutory amendment granting the option, not the requirement, for the tax collector to divide delinquent property. *Timmerman* also predates *Folk*, which plainly puts the pre-sale burden to request the delinquent property be divided on the defaulting taxpayer. *Folk*, 344 S.C. at 82, 543 S.E.2d at 558.

Further, the facts in *Timmerman* are materially disparate from the facts at issue here. In *Timmerman*, the property, which originally totaled six acres, had been legally divided and reduced in acreage by a sale of a portion of the property to the State. 285 S.C. at 144–45, 328 S.E.2d at 129. Despite this, and for purposes of collecting delinquent taxes, the property was advertised, sold, and titled as a six-acre tract. *Id.* at 145, 328 S.E.2d at 130. The *Timmerman* court set aside the tax deed for the smaller tract because it found the levy as a whole was excessive. *Id.* at 147–48, 328 S.E.2d at 131. The court emphasized that "there was evidence that even the smaller tract was worth several times the amount of the taxes due . . . ." *Id.* at 148, 328 S.E.2d at 131 ("[T]he trial judge's finding of excessiveness will not be disturbed on appeal unless found to be without evidentiary support.").

Here, the record reflects that Parcel 2 always totaled 3.7 acres; no portion of Parcel 2 was ever sold; and the public road dividing Parcel 2 was there prior to Cutter obtaining title. This means that when Cutter obtained title to Parcel 2, the title was for a single parcel, rather than two parcels or four individual lots. Moreover, the only evidence Appellants present to assert that one lot could have satisfied the tax debt is based on the sale bid. We do not find this persuasive. Henderson could not have known the amount of the successful bid until after conducting the tax sale.

Fourth, Appellants argue the end of redemption notices (1) incorrectly described Parcel 2, (2) cited the wrong book and page where O & P's mortgage on Parcel 2 was recorded, and (3) incorrectly stated the amount required to redeem Parcel 2. Appellants argue these are fundamental defects that justify voiding the tax sale. We

disagree. This is not a case where there was a failure to give notice. There were certainly errors in the notices, but Appellants have not shown that the notices failed to comply with the statute and therefore constituted fundamental defects in the sale proceedings. *See Rives v. Bulsa*, 325 S.C. 287, 293, 478 S.E.2d 878, 881 (Ct. App. 1996) ("Failure to give the required notice is a fundamental defect in the tax proceedings which renders the proceedings absolutely void."). As Henderson and the successful bidder, Stafford, (collectively, Respondents) point out, the notices contained "the correct recording information for the title to Parcel 2 as well as the correct name of the mortgagor/taxpayer[] and the correct tax identification number for the property." Appellants have not shown that the redemption amount listed on the notices is incorrect; Respondents insist and explain that the amount is correct. The difference between the parties' computations appears related to the amount owed for Parcel 2's 2015 taxes. We agree with Respondents that, as of the date the end of redemption notices were sent, the taxes owed for 2015 totaled $2,037.01.

We are convinced the information in the notices was statutorily sufficient to provide Appellants with constructive notice of the redemption period. *See Johnson v. Arbabi*, 355 S.C. 64, 69, 584 S.E.2d 113, 115–16 ("[N]otice under the tax sales is constructive rather than actual . . . ."); *see, e.g.*, *Hawkins v. Bruno Yacht Sales, Inc.*, 353 S.C. 31, 40–41, 577 S.E.2d 202, 207–08 (2003) (finding an advertisement for a delinquent tax sale was sufficient to alert the delinquent taxpayer to the sale when the notice "list[ed] . . . the taxpayer's name and tax account number").

Last, Appellants argue that Henderson sent Cutter a misleading notice in April 2016, four months after the December 2015 tax sale. This argument is not preserved for appellate review. Thus, we decline to address it. *See Caldwell v. Wiquist*, 402 S.C. 565, 576–77, 741 S.E.2d 583, 589 (Ct. App. 2013) ("[W]here an issue has not been ruled upon by the [circuit] judge nor raised in a post-trial motion, such issue may not be considered on appeal." (citation omitted)); *S.C. Dep't of Transp. v. First Carolina Corp. of S.C.*, 372 S.C. 295, 301–02, 641 S.E.2d 903, 907 (2007) (To preserve an issue for appellate review, "[t]he issue must have been (1) *raised to and ruled upon by the* [*circuit*] *court*, (2) raised by the appellant, (3) raised in a timely manner, and (4) raised to the [circuit] court with sufficient specificity." (emphasis added) (citation omitted)).

Accordingly, the master-in-equity's decision to uphold the tax sale of Parcel 2 is

**AFFIRMED.**

**WILLIAMS, C.J., and HEWITT and VERDIN, JJ., concur.**